Jason MERRIWEATHER, Respondent,

v.

STATE of Missouri, Appellant.

No. SC 89846.

Supreme Court of Missouri,
En Banc.

Sept. 1, 2009.

Chris Koster, Attorney General, Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for Appellant.

Nick Zotos, Nick A. Zotos Law office, St. Louis, MO, for Respondent.

MICHAEL A. WOLFF, Judge.

## Introduction

The jury found Jason Merriweather guilty of forcible sodomy based solely on the testimony of the complaining witness, T.B., who said Merriweather ordered her into his car at gunpoint and forced her to perform oral sodomy. Merriweather said T.B. flagged down his car and offered to exchange oral sex for drugs. T.B. and Merriweather were the only witnesses to the encounter; there was no physical evidence.

The state failed to disclose T.B.'s criminal record, which included convictions for theft. Upon Merriweather's Rule 29.15 post-conviction motion, the motion court ruled that Merriweather did not receive a fair trial and vacated the conviction, citing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); this Court's most recent *Brady* decision, *State v. Goodwin*, 43 S.W.3d 805 (Mo. banc 2001); and Rule 25.03.

The state appeals, asserting that its efforts to locate the criminal record were sufficient and, therefore, that it was not obligated to disclose T.B.'s criminal record. There is no contention that the state acted in bad faith; it appears that the record check made by the prosecutor's investigator failed to reveal the record, perhaps because of a technological glitch. There is no question that the record existed at time of trial; the prosecutor testified she found the record on the morning of the Rule 29.15 motion hearing.

The question posed is whether the state or Merriweather must bear the consequences of this error.

## Facts and Procedural History

T.B. testified that she was walking home after dropping off her daughter at the Greyhound bus station in St. Louis on March 31, 2002, when Jason Merriweather pulled his car in front of T.B., brandished a handgun and ordered T.B. into the car. T.B. entered the car, and Merriweather drove to an alley where he sexually assaulted T.B. The state charged Merriweather with forcible sodomy, armed criminal action, kidnapping and attempted forcible rape.

Prior to trial, Merriweather's counsel ran T.B.'s name through the REJIS database to ascertain her criminal history and was unable to find any criminal record.[1] Merriweather's counsel also made discovery requests to the state for T.B.'s criminal record. The prosecutor's investigator ran criminal background checks on all of the witnesses, including T.B., using the REJIS system. The investigator was unable to find any criminal record.

At trial, Merriweather testified that T.B. had flagged him down as he was driving, entered his car and then offered to exchange oral sex for drugs. After T.B. had performed oral sex on Merriweather, he refused to pay her, and she got out of the car and began screaming at him. As previously noted, there was no physical evidence introduced at trial. The jury convicted Merriweather of forcible sodomy but acquitted him of attempted forcible rape, armed criminal action and kidnapping. Merriweather appealed his conviction, which was affirmed in *State v. Merriweather*, 196 S.W.3d 636 (Mo.App.2006).

At the hearing on Merriweather's Rule 29.15 motion for post-conviction relief, the prosecutor testified that on the morning of

---

1. REJIS is the regional justice information service. It is an electronic database that can perform background checks. Criminal records from St. Louis city and St. Louis County can be accessed through the REJIS system.

the hearing, she ran a criminal record check on T.B. using the L.E. Web system, an updated database the St. Louis circuit attorney began using after the time of Merriweather's trial. The search produced three prior convictions for retail thefts from Sangamon County, Illinois, and a pending charge for fraudulent use of a credit device in St. Louis County. All of the charges preceded the date of Merriweather's trial.

While there was no evidence that the state intentionally had failed to disclose T.B.'s criminal record, Merriweather contended that the failure to disclose T.B.'s criminal record to the defense was a violation of both *Brady* and Rule 25.03, which require that the state disclose any record of its witnesses' prior criminal convictions.

At the post-conviction hearing, the investigator testified that his REJIS search of T.B.'s name did not reveal the prior convictions in Sangamon County or the pending charge in St. Louis County. The investigator could not provide a definitive reason as to why REJIS failed to pick up those previous charges. The state's witnesses did not testify as to what, exactly, the state did to obtain the evidence, other than the REJIS search. Nor could the investigator recall whether he had searched for T.B.'s criminal record under any of the known aliases she used, even though the investigator knew she had used aliases.

The motion court vacated Merriweather's conviction, concluding that although the failure to disclose may have been inadvertent rather than intentional, the defendant was deprived of his right to fair trial. The state appealed the motion court's decision. After opinion in the court of appeals, this Court granted transfer pursuant to Mo. Const. art. V, sec. 10.

## Standard of Review

" 'This Court will uphold the findings and conclusions of the motion court unless they are clearly erroneous.' . . . Findings and conclusions are clearly erroneous if, after reviewing the entire record, the appellate court has the definite and firm impression that a mistake has been made." *Williams v. State*, 168 S.W.3d 433, 439 (Mo. banc 2005) (citing *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000)); *see also* Rule 29.15(k).

### *Brady v. Maryland*

*Brady* holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. 1194. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). "According to *Brady*, due process requires the prosecution to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *Goodwin*, 43 S.W.3d at 812.

Not before this Court is the question of interpreting the scope of the terms "government agents" or "possession" used in the *Brady* case law. In *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the Supreme Court held that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the

police." Several federal courts have examined whether "the government" includes governments of other states or may be limited to government agents connected with the prosecuting body. *See, e.g., United States v. Jones,* 34 F.3d 596, 599 (8th Cir.1994) ("*Brady* requires the prosecution to disclose to the defendant only evidence in the prosecution's possession ... The government has no 'affirmative duty ... to take action to discover information which it does not possess.' ... There is, therefore, no *Brady* violation if the government does not 'possess' the material at issue. In addition, the 'prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find impeaching evidence.' ") (internal citations omitted).

Although *Brady* informs this Court's judgment and states a basis for a finding of denial of due process, the law subject to interpretation here is Rule 25.03, which governs disclosure requirements in criminal proceedings.

### Rule 25.03

■ Violations of the discovery rules are trial errors, which are cognizable in a post-conviction proceeding only in limited circumstances. *See State v. Carter,* 955 S.W.2d 548, 555 (Mo. banc 1997) ("The state's alleged failure to comply with [a] discovery request is a claim of trial error, which is outside the scope of a Rule 29.15 motion. Claims of trial error will only be considered in a Rule 29.15 motion where fundamental fairness requires, and then, only in rare and exceptional circumstances.") (internal citations omitted). The due process implications of a failure to disclose potentially exculpatory material render Merriweather's claim of a Rule 25.03 violation an issue of "fundamental fairness."

Rule 25.03 outlines the disclosure requirements in a criminal proceeding as follows:

(A) ... the state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information within its possession or control designated in said request:

. . .

(7) Any record of prior criminal convictions of persons the state intends to call as witnesses at a hearing or the trial;

. . .

(9) *Any material or information, within the possession or control of the state,* which tends to negate the guilt of the defendant as to the offense charged, mitigate the degree of the offense charged, or reduce the punishment.

. . .

(C) If the defense in its request designates material or information which would be discoverable under this Rule if in the possession or control of the state, but which is, in fact, in the possession or control of other governmental personnel, *the state shall use diligence and make good faith efforts to cause such materials to be made available* to the defense counsel ...

(Emphasis added).

Rule 25.03 was a criminal discovery rule promulgated in 1973, after *Brady* was decided. Rule 25.03, unlike *Brady,* imposes an affirmative requirement of diligence and good faith on the state to locate records not only in its own possession or control but also in the control of other governmental personnel. In *Brady* case law, diligence is treated as a sub-requirement of possession. If a government agent diligently searches and does not lo-

cate the relevant information, then the state is not viewed as having "possessed" the information. As the Eighth Circuit observed in *Jones:*

> *Brady* requires the prosecution to disclose to the defendant only evidence in the prosecution's possession.... The government has no "affirmative duty ... to take action to discover information which it does not possess." *United States v. Tierney,* 947 F.2d 854, 864 (8th Cir.1991) (citation omitted). *See also United States v. Dunn,* 851 F.2d 1099, 1101 (8th Cir.1988) ("the government has no affirmative obligation to discover potentially exculpatory information which it neither possessed nor of which it was aware"). There is, therefore, no *Brady* violation if the government does not "possess" the material at issue. *Id.* In addition, the "prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find impeaching evidence." *United States v. Stuart,* 923 F.2d 607, 612 (8th Cir.1991), *cert. denied,* 499 U.S. 967, 111 S.Ct. 1599, 113 L.Ed.2d 662 (1991).

*Jones,* 34 F.3d at 599.

Unlike *Brady,* Rule 25.03 does, in fact, impose an "affirmative duty ... to take action to discover information which it does not possess." *Tierney,* 947 F.2d at 864. The records in question here were Illinois records, but Missouri officials had access to them through the NCIC database.[2] Under Rule 25.03(c), the state has an affirmative duty to find even that evidence in the possession of "other government personnel." The question therefore becomes whether the state exercised sufficient diligence to locate the records not only in its own possession or control but also "in the possession or control of other governmental personnel." Rule 25.03(c).

## Did the State's efforts comport with Rule 25.03?

█ What, in the circumstances of this case, constitutes sufficient "diligence" and "good faith efforts" to meet the requirements of Rule 25.03? Inadvertence and good faith do not excuse a failure to comply with Rule 25.03.

There is no dispute that the records existed. The state leaves the motion court with vague answers of how extensively it conducted the search and whether it searched T.B.'s known aliases.

Whether the state complied with its obligations to search diligently for evidence in the possession of other government personnel that is favorable to Merriweather is a question of fact. At the hearing on Merriweather's post-conviction motion, the prosecutor conceded that T.B. had three prior criminal convictions from Illinois that were not disclosed to Merriweather prior to trial. The evidence regarding the state's efforts to obtain T.B.'s criminal history prior to trial was testimony from an investigator for the prosecutor. It is reasonable to infer from the investigator's testimony that he did not remember whether he had conducted a search of any computer database for T.B.'s criminal history. Instead, he testified that, normally, it was his practice to "run the lay witnesses' criminal histories" prior to trial. When asked whether he ran a criminal history on T.B., including her three aliases, he responded that he "couldn't be a hundred

---

**2.** There is an arrangement between Missouri and the FBI where a uniform crime reporting system is established and criminal information is compiled and reported "consistent with the reporting standards established by the National Crime Information Center, Federal Bureau of Investigation, for the Federal Interstate Identification Index System." Section 43.505, RSMo 2000; section 43.506, RSMo Supp.2008. NCIC is a national database that would include convictions from the state of Illinois.

percent sure," but stated that "we run everybody." The investigator further testified that, even when the criminal history search does not show any convictions, it is his practice to print out that history, highlight the pertinent information and give it to the prosecutor. There was no printout regarding T.B.'s criminal history in the prosecutor's file.[3] In response to questions asked during cross-examination, the investigator stated that, at the time of Merriweather's trial in 2005, he had access to MULES[4] and NCIC but that he ran criminal history checks only on REJIS. This evidence is sufficient to support a finding that the state failed to make a diligent effort to provide Merriweather with the favorable evidence.

While the importance of the evidence is relevant to the issue of prejudice, it also may be considered as context in assessing what constitutes "diligence" under Rule 25.03. The state's case depended entirely on the credibility of the victim, T.B. The state had no physical evidence, there was no circumstantial evidence to support her allegations and there were no other witnesses who could offer any direct evidence of Merriweather's guilt. The case hinged on which witness—T.B. or Merriweather—the jury chose to believe. If the jury disbelieved T.B.'s version of events, an ac-

quittal was more likely to occur. In view of the importance of impeaching information about T.B., the state's indefinite and incomplete efforts to check T.B.'s criminal record failed to fulfill Rule 25.03's requirement of diligence.

## Conclusion

In sum, the burden is on the state to show that its search was diligent. On the record here, the state did not meet its burden of showing due diligence under Rule 25.03. Prejudice doubtlessly ensued in this case because credibility was pivotal and the convictions probably would have affected the jury's assessment of T.B.'s credibility. The record supports the motion court's conclusion that the state's failure to disclose T.B.'s previous convictions violated Rule 25.03 and deprived Merriweather of his right to a fair trial.[5]

The judgment is affirmed.

All concur.

3. When Merriweather's counsel asked the prosecutor to look in her file to see if there was any record of a search of T.B.'s criminal history, the prosecutor stated "I don't keep documents that don't say anything...."

4. MULES is the Missouri Uniform Law Enforcement System (MULES), which is "a statewide-computerized communications system provided by the [highway] patrol designed to provide services, information, and capabilities to the law enforcement and criminal justice community in the State of Missouri." Section 43.010(2), RSMo Supp.2008.

5. The state asserts that its failure to disclose the charge for fraudulent use of credit device pending in St. Louis County at the time of

Merriweather's trial does not constitute a *Brady* violation because that evidence would have been inadmissible at trial. The state argues that, because in Missouri "the credibility of a witness may not be attacked by showing his arrest and a pending charge which has not resulted in a conviction," the pending charge in St. Louis County never would have been admissible, and, therefore, could not be considered "material" within the meaning of Rule 25.03 or *Brady*. *State v. Lockhart*, 507 S.W.2d 395, 396 (Mo.1974). In light of the state's failure to disclose T.B.'s convictions, it is not necessary to address this question except to note that a pending charge against a witness is discoverable for the purpose of inquiring whether the witness is receiving any

consideration on the pending charge because       of her cooperation in the current case.