**Mark GILL, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. SC 89831.

Supreme Court of Missouri,
En Banc.

Dec. 1, 2009.

Rehearing Denied Jan. 26, 2010.

William J. Swift, Office of the Public Defender, Columbia, MO, for appellant.

Chris Koster, Attorney General, James B. Farnsworth, Assistant Attorney General, Jefferson City, MO, for respondent.

MARY R. RUSSELL, Judge.

Mark Gill was convicted of first-degree murder by a New Madrid County jury.[1] The jury recommended the death penalty, and the trial court agreed, sentencing Gill to death. This Court affirmed the conviction in *State v. Gill*, 167 S.W.3d 184 (Mo. banc 2005). Gill sought post-conviction relief by a Rule 29.15 motion, claiming prosecutorial misconduct and ineffective assistance of counsel. The motion court issued an order denying each of his claims. He appeals. Because the death penalty was imposed, this Court has jurisdiction of the appeal. Mo. Const. art. V, sec. 10; Order of June 16, 1988.

Among the issues in this case is whether Gill's counsel provided ineffective assistance of counsel by failing to review carefully the directory of the victim's computer, which contained child pornography, or

1. Along with first-degree murder, Gill was also convicted of armed criminal action, kidnapping, first-degree robbery, and first-degree tampering.

by not interviewing or deposing the investigator who prepared the directory.

Although a victim's character is not typically an issue, when the State introduced evidence of the victim's good character in the penalty phase, Gill's counsel should have rebutted the State's good character evidence with the sexually explicit contents of the victim's computer. Because his counsel failed to discover the sexually explicit contents of the victim's computer, Gill's counsel were ineffective. This Court affirms the denial of the Rule 29.15 motion as to the guilt phase of the trial, but reverses the denial of the motion as to the penalty phase insofar as Gill had ineffective assistance of counsel for failing to investigate the victim's computer. The case is remanded.

## I. Facts

### A. Preparation for Trial

Defense counsel David Kenyon and Sharon Turlington did the majority of Gill's trial preparation, including reviewing the documents provided in discovery. Among the documents received were several reports authored by Lt. David James of the Cape Girardeau County Sheriff's Department. Lt. James prepared the probable cause statement, which stated that "[Gill] had [the victim's] computer in the car with him at the time of his arrest." Lt. James's name also appeared on several police reports as the supervisor giving other officers investigative assignments. In addition, the State included Lt. James as a witness in the second amended information.

In addition to his work as the officer in charge of the investigation, Lt. James pre-

pared a report, which was a listing of all the file folders or directories on the victim's computer.[2] Approximately a month prior to trial, the prosecutor sent defense counsel a copy of the report for their review.

The report included a list of instant message accounts and a list of the users with whom the accounts exchanged messages. User name "dogday_afternoon2002" exchanged messages with 16 other users: (1) "a_slutty18girl_w38c," (2) "blackstamina69," (3) "cherie_012," (4) "daddoesme15," (5) "elena_ita_girl," (6) "jbnrbi," (7) "jenny_cappa," (8) "kellieann1980," (9) "kelly1_15_1999," (10) "lilnichole14," (11) "lobowolf1960," (12) "msdiane69," (13) "sweet_tasting_slute," (14) "sweetgirl4older," (15) "sweetpiece123," and (16) "tiffyfreemont11."

Defense counsel reviewed the report prior to trial but did not notice anything that would have alerted them to the presence of pornography on the computer. In addition to reviewing the report, Gill's counsel spoke with the prosecutor about the computer's contents. Their discussions with the prosecutor focused on whether the computer contained (1) anything possibly incriminating and (2) any e-mails that implicated another potential defendant. The prosecutor assured defense counsel that there was nothing on the computer that he planned to use in the case or that implicated another potential defendant. Relying on the prosecutor's assertions, defense counsel decided to focus their attention away from the computer's contents.

### B. Evidence About Victim Presented at Penalty Phase

The prosecutor presented five witnesses during the penalty phase of Gill's trial.

---

**2.** The victim's computer was relevant to the investigation and prosecution of the crime because, after the murder, Gill and his co-defendant, Justin Brown, used the computer to transfer $55,000 from one of the victim's accounts to an ATM-accessible account so that they could access the money.

Sgt. Eric Friedrich testified as to Gill's prior convictions. The other four witnesses, all relatives of the victim, testified as to how the victim's death affected their lives and to the victim's good character.

First, the victim's sister identified a family photograph album chronicling the victim's life. She also read her prepared impact statement to the jury and spoke about the victim's role in her life, including defending her against other children. She stated how proud the victim was of his daughter when she was born. She said that the image of him cradling his daughter when she was an infant reminded her of a "Mr. Mom." Additionally, she spoke about the victim's generosity with his money.

Second, the victim's brother-in-law testified about his relationship with the victim. The first day they met, the victim helped him push his car to a gas station. When he and his wife wanted to marry, the victim reassured their uneasy family about the couple's decision. The brother-in-law testified that he and the victim studied "the West, the mythical West, and the true West, for years and years," including the characters who taught valuable life lessons, such as "[y]ou don't cheat at cards" and "you don't start any trouble, but you stand up to it when it comes."

Third, the victim's brother read a prepared statement to the jury. He recalled their childhood relationship and how the victim had helped him throughout their adolescent years. As adults, they kept in touch. During one visit, the brother learned that the victim was having serious financial problems because he had been generous with his money, including lending a friend money to pay for his wife's funeral. The brother concluded his statement by paraphrasing Abraham Lincoln's Gettysburg Address: "The world will little note, or long remember what we say here. But they will never forget what we did here." He said that this paraphrase described his memories of the victim.

Fourth, the victim's 17–year–old daughter testified. She told the jury of the impact of her father's death. She indicated that she stays awake at night thinking about how he was murdered. When asked about how her life will be different now that her father was murdered, she replied, "Some day I'm gonna graduate college, and he's not gonna be there to tell me how proud he is of me. And some day I'll get married, and I won't have my dad to walk me down the aisle and tell me how proud he is of me."

### C. Post–Penalty Evidence

Lt. James testified at the Rule 29.15 hearing that he knew there was pornography on the computer within a few days of creating the report. Before Gill's trial, he looked at the transcript of the instant message conversation about the 17–year–old daughter. Yet Gill's counsel testified that they chose not to interview or depose Lt. James. Defense counsel testified that while Lt. James was the officer in charge, they chose not to interview or depose him because he did not conduct the investigation himself and would be of little use at trial because his testimony would be hearsay.

Lt. James never told the prosecutor about the instant message conversation prior to Gill's trial because he did not think it was relevant to the case. In fact, the first time he told anyone about the computer's sexual contents was after Gill's trial when Brown's counsel asked about child pornography on the computer. Lt. James then told the prosecutor that the computer contained child pornography, bestiality content, and instant message conversations.

Prior to Brown's trial, his counsel requested a copy of the contents of the victim's computer and had its hard drive, including the Internet history, reviewed by a computer analyst.[3] The analyst testified at Gill's Rule 29.15 hearing as to his findings. The analyst used software to decode instant messages sent from and received by the victim's computer. On each of the instant messaging files, the profile "dogday_afternoon2002" was used. All six conversations were sexually explicit, and four of those conversations included references to sex with underage girls. In one particular conversation, "dogday_afternoon2002" wrote about a 17–year–old daughter named Megan and described her as "5'7" ... 140 ... blonde hair ... blue eyes ... that tight teen girl ass ... 38c." The conversation goes on to describe Megan's anatomy in detail, and then "dogday_afternoon2002" says that he and Megan only do "touchy feely things, but I sure want more."

In addition to decoding the instant messages, the analyst also investigated the Yahoo! profiles found on the computer, including the "dogday_afternoon2002" profile. The basic information listed for the profile revealed the following information about the user: real name—Ralph, age—45, marital status—divorced, gender—male, and occupation—retired. The profile also revealed that the user's hobbies were "boating, fishing, camping, socializing with friends, drinking beer on my boat, Oh, and sex, all kinds, except I don't do men." The user also wrote in his profile that he has a new boat and to "come take a ride with me." Moreover, the user included a picture with his profile, which was an image of a white male from his navel to his feet with his penis exposed.

The analyst also found child pornography images and bestiality content on the victim's computer. The analyst described several of the child pornography images he found on the victim's computer. The pictures were of nude females who appeared to be younger than 18 in sexual poses. Some of the females were sexually developed, while others were sexually undeveloped.

Brown's defense counsel told the prosecutor about the sexual instant message conversations and the picture of a white male from his navel to his feet with his penis exposed. At this point, the prosecutor filed a motion in Brown's case to exclude the computer's sexual content. His reasoning was that the computer's sexual content was irrelevant and that the defense could not attack the victim's reputation in the penalty phase. The trial judge ruled that the computer's sexual content would be excluded as irrelevant unless the penalty phase witnesses portrayed the victim as someone who "walks on water" or as a "saint."

At the penalty phase of Brown's trial, the prosecution did not present good character evidence about the victim that opened the door to the computer evidence. Although the same four relatives of the victim testified during the penalty phase of Brown's trial, their testimony was more restrained. The prosecutor alerted the witnesses not to cast the victim as a "saint." The sister did not speak about the victim's generosity with money. The brother-in-law did not talk about the character lessons he and the victim learned from the West. The brother discussed the

---

**3.** Lt. James initially objected because it is a crime to disseminate child pornography, and the prosecutor opposed the request for the same reason. The trial judge, however, ordered the prosecutor to turn over a copy of the computer's contents for use by the defense expert.

victim's generosity with money but did not mention paying for the funeral of his friend's wife. The daughter's testimony was substantially the same in the penalty phase of both Gill's and Brown's trials.

A jury found Brown guilty of first-degree murder and kidnapping. The State pursued the death penalty, but the jury assessed life imprisonment without parole.[4]

## II.   Standard of Review

■ This Court reviews whether the post-conviction motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). Findings and conclusions are clearly erroneous if, after reviewing the entire record, there is a " 'definite and firm impression that a mistake has been made.' " *Forrest v. State,* 290 S.W.3d 704, 708 (Mo. banc 2009) (quoting *Goodwin v. State,* 191 S.W.3d 20, 26 (Mo. banc 2006)).

## III.   Analysis

### A.   State's Failure to Disclose the Computer's Contents

■■ Gill claims that the motion court clearly erred by not finding that the State committed a *Brady v. Maryland* violation by failing to disclose the contents of the victim's computer prior to trial. In *Brady,* the United States Supreme Court held that the State violates due process if it suppresses evidence that is favorable to the accused and material to either the guilt

phase or the penalty phase.   373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The State violates due process regardless of whether it withheld the evidence in good faith or in bad faith.  *Id.*

■ *Brady* applies where, after trial, the defense discovers new information that the prosecution knew at trial. *State v. Salter,* 250 S.W.3d 705, 714 (Mo. banc 2008).   If the defense knew about the evidence at the time of trial, no *Brady* violation occurred.  *Id.* Here, a month before trial, the State disclosed the contents of the computer to defense counsel by sending a copy of the report, which listed all the computer's file folders or directories. Although defense counsel may not have thoroughly examined the report, they possessed it.   There was no *Brady* violation, and the motion court's findings and conclusions regarding this point are not clearly erroneous.[5]

### B.   Ineffective Assistance of Counsel

Gill next alleges the motion court clearly erred by finding that he did not receive ineffective assistance of counsel because his counsel failed to discover the pornography on the victim's computer.   He argues that his counsel could have used the evidence in the penalty phase either to rebut the State's characterization of the victim as a "saint"[6] or to dissuade the State from using character evidence altogether.

---

4.   Brown's sentence to life imprisonment cannot be attributed to different factual scenarios presented to the jury regarding who pulled the trigger.   In their respective trials, both Gill and Brown claimed that the other pulled the trigger.  *See State v. Gill,* 167 S.W.3d 184, 188 (Mo. banc 2005); *State v. Brown,* 246 S.W.3d 519, 524–25 (Mo. App.2008).

5.   Gill also asserts a Rule 25.03(A)(9) discovery violation for the failure to disclose the computer's contents.   Violations of discovery

rules are usually outside the scope of a Rule 29.15 motion.  *Merriweather v. State,* 294 S.W.3d 52, 55 (Mo. banc 2009).   If the violation of the discovery rule implicates due process, then the Court may consider the violation in a Rule 29.15 motion.  *Id.* Because no denial of due process took place here, Gill's claim is without merit.

6.   Along with presenting character evidence about the victim during the penalty phase, during the opening statement for the guilt phase, the prosecutor referred to the victim as

To prove ineffective assistance of counsel sufficient to reverse a death sentence, the movant must establish the two prongs of the *Strickland v. Washington* test. 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the movant must establish that counsel's performance was deficient. *Id.* Counsel's performance is deficient if it falls below an objective standard of reasonableness, as measured by prevailing professional norms. *Id.* at 688, 104 S.Ct. 2052. There is a strong presumption that counsel's conduct was reasonable and effective. *Anderson v. State,* 196 S.W.3d 28, 33 (Mo. banc 2006). To overcome that presumption, the defendant must identify specific acts or omissions that, in light of all the circumstances, fell outside the wide range of professional, competent assistance. *Id.* Second, the movant must establish that counsel's deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Prejudice exists in a death penalty case if there is a reasonable probability that, but for counsel's deficient performance, the jury would have recommended life imprisonment rather than the death penalty. *Forrest,* 290 S.W.3d at 708.

### 1. Victim Impact Character Evidence

The trial court has broad discretion during the penalty phase to admit any evidence it deems helpful to the jury in assessing punishment. *State v. Gill,* 167 S.W.3d 184, 195 (Mo. banc 2005). The implication of the death penalty entitles the jury to evidence that may assist it in making its recommendation, including victim impact testimony. *See State v. Kreutzer,* 928 S.W.2d 854, 874 (Mo. banc 1996).

Victim impact evidence is admissible under the United States and Missouri Constitutions. *State v. McLaughlin,* 265 S.W.3d 257, 273 (Mo. banc 2008). Victim impact statements are another method of showing the jury the harm caused by the crime. *State v. Storey,* 40 S.W.3d 898, 908 (Mo. banc 2001). Such evidence illustrates that the victim's death represented a unique loss to the family. *Gill,* 167 S.W.3d at 195. Just as the defendant is allowed to present mitigation evidence showing he is a unique individual, the State is allowed to present evidence showing the victim's uniqueness as well. *Storey,* 40 S.W.3d at 909.

Not every piece of victim impact evidence must relate to the direct impact of the victim's death on the witness. *Gill,* 167 S.W.3d at 196. As this Court already decided in Gill's direct appeal, while portions of the victim impact evidence did not relate to the direct impact of the victim's death, the testimony was still proper. *Id.*

Generally, neither the State nor the defense may introduce character evidence about the victim in a murder case. *See State v. Hall,* 982 S.W.2d 675, 681 (Mo. banc 1998).[7] If the State attempts to introduce evidence of the good character of a victim in the penalty phase, defense counsel has two options. Defense counsel may object to the introduction of the character evidence. If defense counsel chooses this option, the trial court should sustain the objection and disallow the character evidence. Alternatively, defense counsel may, as a strategic maneuver, choose to allow the State to present the

---

a "Good Samaritan" who gave Gill a place to stay when he had nowhere to live.

**7.** If the defendant raises self-defense, the State may introduce evidence of the good character of the victim in a murder case. *See*

*Hall,* 982 S.W.2d at 681. If so raised, "[a] victim's reputation for violence, turbulence, and aggression may be admissible." *State v. Gonzales,* 153 S.W.3d 311, 312 (Mo. banc 2005).

good character evidence of the victim. By doing so, the State opens the door for the defense to present rebuttal character evidence.

Here, the State introduced character evidence regarding the victim from family members' testimony.[8] The victim's sister testified as to the victim's generosity with money. The victim's brother-in-law testified about the victim's fascination with the characters from the Old West and the valuable life lessons those characters taught. The victim's younger brother testified about his relationship with the victim and the victim's generosity with what little money the victim had, including paying for a funeral for his friend's wife.

### 2. Gill's Counsel's Performance Was Deficient

■ When the State introduced evidence regarding the victim's good character, Gill's counsel should have presented rebuttal evidence. However, his counsel failed to present rebuttal character evidence because they failed to discover it. They saw the names of the sexually explicit files on the report but were not diligent in investigating further. Defense counsel testified at the Rule 29.15 hearing that after more carefully reviewing the report, they noticed entries that should have alerted them to the presence of pornography on the computer. They had the opportunity to discover the child pornography, bestiality content, and instant message conversations on the victim's computer but neglected to do so.

By failing to discover those files on the victim's computer, Gill's counsel's performance was deficient. A reasonably competent attorney would have carefully reviewed the report provided by the State and recognized file names like "a_sluttyl8girL_w38c" and "sweet_tasting_slute" as evidence of sexually explicit material on the computer. A reasonably competent attorney would have conducted further investigation as to the contents of the computer and discovered the child pornography images, bestiality content, and sexually explicit instant message conversations about the 17–year–old daughter. Then, a reasonably competent attorney would have rebutted the State's character evidence at the penalty phase.

Moreover, a reasonably competent attorney would have interviewed or deposed Lt. James, the investigator who prepared the probable cause statement and the report and who the State had listed as a potential witness. He knew the victim's computer contained sexually explicit material. If Gill's counsel had interviewed or deposed Lt. James about the report, they would have learned about the child pornography images, bestiality content, and sexually explicit instant message conversations on the victim's computer. Then, a reasonably competent attorney would have been able to rebut the State's character evidence at the penalty phase. Gill's counsel were unprepared to rebut the State's character evidence of the victim and, therefore, their performance was deficient if the prosecutor still chose to introduce that evidence.

### 3. Gill Suffered Prejudice as a Result of Counsel's Deficient Performance

■ Although Gill's counsel's performance fell outside the wide range of professional, competent assistance, Gill must also establish that his counsel's deficient performance prejudiced him. If Gill's counsel had discovered the sexually explicit material on the victim's computer, they could

---

8. Defense counsel objected by renewing his motion in limine to limit victim impact evidence to exclude good character testimony about the victim. The objection was overruled.

have used the evidence in two ways. First, they could have used the sexually explicit material to persuade the prosecutor to limit the testimony to victim impact rather than to elicit positive character evidence. Second, Gill's counsel could have used the sexually explicit material to rebut the State's positive character evidence about the victim.

The jury would have had an alternative description of the victim when it deliberated whether to recommend the death penalty for Gill. There is a reasonable probability that, with the different description of the victim, the jury would have decided that, in its consideration of all of the evidence, the death penalty was not proper punishment for Gill. The reasonable probability of a sentence to life imprisonment rather than a sentence to death is highlighted by counsel's actions and the jury's decision in the later trial of Gill's co-defendant, Justin Brown. That Brown's jury recommended life imprisonment, not death, assists in showing a reasonable probability that, had Gill's counsel discovered the computer's sexual content, Gill would not have been sentenced to death.

Because Gill has established that his counsel's performance was deficient and that he suffered prejudice as a result of their deficient performance, he has proven he received ineffective assistance of counsel during the penalty phase of his trial. The motion court's findings of fact and conclusions of law were clearly erroneous in finding otherwise.

## C. Prosecutor's Negotiation Deception

■ Gill next claims that the motion court clearly erred in finding that the prosecutor did not engage in prosecutorial misconduct. He alleges that the prosecutor purposely misled defense counsel into believing the State would waive the death penalty if Gill provided information that would lead to the prosecution of another potential defendant. According to Gill, the prosecutor purposely misled defense counsel because he knew that the victim's family wanted the death penalty pursued regardless of his cooperation.

■ The State may not give misleading information to the defendant. *State v. Kilgore*, 771 S.W.2d 57, 65 (Mo. banc 1989). Here, however, the evidence presented at the Rule 29.15 hearing established that the prosecutor did not convey misleading information to the defendant. The prosecutor testified that he remained open to the possibility of a plea agreement throughout preparation for the case. The prosecutor believed that Gill had no information to implicate another defendant for the murder of the victim, but he still would have considered waiving the death penalty had Gill provided him with information to charge the potential defendant with a serious crime. The prosecutor's actions did not mislead defense counsel into believing that he would waive the death penalty. The motion court's findings on this point are not clearly erroneous.

## D. Lack of Independent Judicial Judgment

■ Gill finally claims that the motion court lacked independent judicial judgment when it signed the State's proposed findings of fact and conclusions of law. He argues that the findings and conclusions were contrary to how multiple witnesses testified at the Rule 29.15 hearing. Gill failed to preserve this issue for appellate review. Because the motion court was not given an opportunity to review this alleged error, the claim is not preserved for appellate review. *See State v. Kenley*, 952 S.W.2d 250, 260 (Mo. banc 1997). Further, Gill does not seek plain error review.

## IV. Conclusion

The judgment is reversed as to the penalty phase insofar as Gill had ineffective

235

assistance of counsel for failing to investigate the victim's computer. In all other respects, the judgment is affirmed. This case is remanded.[9]

All concur.

9. Gill raises other errors in regard to the penalty phase. Those points do not need to be discussed in light of this Court's remand for a new penalty phase.