

# In the Missouri Court of Appeals
# Eastern District

DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED103818 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| v. | ) | |
| | ) | |
| MARK LEE KILGORE, | ) | Honorable Norman C. Steimel, III |
| | ) | |
| | ) | |
| Defendant/Appellant. | ) | Filed: November 15, 2016 |

## Introduction

Mark Lee Kilgore (Appellant) appeals from the trial court's judgment entered upon a jury

verdict finding him guilty of one count of third-degree assault. We affirm.

## Factual and Procedural Background

Appellant, 43, was charged with one count of third-degree assault, based on his conduct

in striking his tenant Dennis Vogt (Vogt), 63, who rented a basement room in Appellant's house.

Appellant's brother, Jason Kilgore (Jason), also rented from Appellant and lived in the basement,

but his room did not have a door; rather, his area was in the basement proper and his bed was

near the bottom of the basement stairs. The tenants in Appellant's house shared the refrigerator

in the kitchen, in which Vogt had his own drawer.[1]

---

[1] A total of six people, five tenants and Appellant, lived in the house.

On the afternoon of February 16, 2014, Vogt was in his rented basement room on his computer and Jason was sleeping in his bed at the foot of the basement stairs. Before leaving for work, Appellant noticed two moldy, rotten food items in Ziploc and Tupperware containers which he believed belonged to Vogt. Appellant became angry and proceeded to the basement to confront Vogt. Jason awoke when Appellant turned on the basement lights and stomped down the basement stairs. Appellant was angry and calling for Vogt. He pounded on Vogt's door and Vogt opened it. Appellant asked him if the moldy food in the refrigerator was his. Appellant followed Vogt who proceeded up the stairs to look at the food. On their way up, Vogt decided he did not have to assent to Appellant's demands and turned around to head back down to his room. As Vogt approached the bottom of the stairs, Appellant turned off the basement lights, set his cell phone on a table, and assumed a fight pose. Appellant punched Vogt in the head, stunning him, then grabbed him around the neck and repeatedly hit him in the head. When Vogt was finally able to collect himself, he grabbed Appellant in the crotch, ending the altercation. Appellant went upstairs and Jason checked Vogt's head for injuries. Jason called the police. Officer Joshua Taylor (Officer Taylor) responded to the call and arrested Appellant, who was subsequently charged.

The case proceeded to jury trial. Defense counsel submitted an affidavit that on the evening before trial, assistant prosecuting attorney Brittney Smith (APA Smith) contacted him and informed him she had researched criminal background on the State witnesses and none had any criminal history to disclose. On the morning of trial, the State filed a Motion to Endorse Additional Witnesses signed by assistant prosecuting attorney Daniel J. Kertz (APA Kertz) naming Officer Davis, Jason, Officer Mark Luttrell, and Robert Swarts (Swarts), a third tenant who did not actually witness the assault. Defense counsel's affidavit also stated that as Swarts

2

entered the courtroom that afternoon to testify, APA Smith whispered to defense counsel that Swarts had a DWI.

The State called Swarts to testify regarding Appellant's alleged character for violence and being confrontational. Swarts testified Appellant's house was like a cult with Appellant as the leader victimizing the tenants who seemed to tremble in fear when Appellant entered the room. Swarts testified he learned Appellant had a lengthy history of abusing his brother Jason. Swarts described Appellant as constantly aggressive and berating, and the tenants were terrified of him.

Swarts testified Vogt, on the other hand, was peaceful and "one of the most meek [sic] men for his size I've ever met." Swarts maintained Vogt was not aggressive, violent, or threatening, and would not even defend himself. After the incident at issue, Swarts took Vogt to the courthouse to obtain an order of protection against Appellant. Swarts also moved out of Appellant's house.

Defense counsel did not impeach Swarts with his DWI conviction because Appellant also had a DWI and would be testifying.

At the close of the State's evidence, Appellant moved for a Judgment of Acquittal, which the trial court denied. Appellant testified in his defense. At the close of all evidence, Appellant again moved for a Judgment of Acquittal, which the trial court denied.

Following the submission of the case to the jury, defense counsel discovered through his own background research Swarts had three convictions: second-degree assault by operating a vehicle while intoxicated resulting in injury, a class C felony; leaving the scene of an accident, a class D felony; and stealing over $500, a class C felony.

The jury found Appellant guilty of third-degree assault as charged. Prior to sentencing, the trial court heard Appellant's third Motion for Judgment of Acquittal and his Motion for New

3

Trial, which it denied. The trial court sentenced Appellant to sixty days in the St. Charles County Jail and suspended execution of sentence, placing him on supervised probation for a period of two years and ordering him to serve five days' shock time, to stay away from Vogt, and to attend anger management classes. This appeal follows. Additional facts pertinent to the points on appeal will be adduced as necessary.

## Points on Appeal

In his first point, Appellant claims the trial court erred in denying his Motion for a New Trial because the State violated Rule 25.03[2] and his due process rights by failing to disclose the criminal convictions of Swarts, its key character witness.

In his second point, Appellant asserts the trial court erred in denying his Motion for Judgment of Acquittal because the uncontradicted and undisputed evidence established his claim of self-defense entitling him to an acquittal as a matter of law.

## Standards of Review

This Court reviews a trial court's denial of a motion for new trial for an abuse of discretion. State v. Moore, 411 S.W.3d 848, 852 (Mo.App. E.D. 2013). Under this standard, we must determine whether the trial court's ruling constituted an abuse of discretion because it offended the logic of the circumstances or was arbitrary and unreasonable. Id. Thus, an abuse of discretion is found when reasonable persons could not differ as to the propriety of the action taken by the court. Id.

This Court reviews the denial of a motion for acquittal to determine if the State adduced sufficient evidence to make a submissible case. State v. Sistrunk, 414 S.W.3d 592, 596 (Mo.App. E.D. 2013). This Court will affirm a trial court's denial of a motion for judgment of

---

[2] All rule references are to Mo. R. Crim. P. 2014.

4

acquittal if, at the close of evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense. Id. In so reviewing, this Court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn therefrom, whereas all contrary evidence and inferences are disregarded. Id. We do not weigh the evidence, but rather merely determine whether there was sufficient proof, including any incriminating evidence developed during the defendant's case, from which the trial court could reasonably have found the defendant guilty. Id.

Discussion

Point I

Appellant maintains the issue at trial was not whether the physical altercation occurred, but whether Appellant acted in self-defense. Once Appellant injected the issue of self-defense, his character was put into question. The State's key character witness was Swarts. The State did not investigate and discover, and consequently did not disclose to the defense, Swarts had convictions for second-degree assault by operating a vehicle while intoxicated resulting in injury, a class C felony; leaving the scene of an accident, a class D felony; and stealing over $500, a class C felony. Defense counsel relied on APA Smith's disclosure to defense counsel that Swarts had a DWI, but she had not run an investigative background check on him. Defense did not request a continuance to interview Swarts or to conduct a background check on him. Rather, defense counsel waited until the jury retired to deliberate and then conducted a background check on Swarts, wherein he discovered the three felony convictions.

Appellant maintains this background information is significant, particularly to Appellant's claim of self-defense, because it casts doubt on the character and credibility of Swarts, the State's main character witness who attacked the character of Appellant, portraying

5

him as an angry, volatile, and violent man, and described Vogt, the victim, as peaceful and meek, thereby significantly undercutting Appellant's self-defense theory.

Rule 25.03 outlines the disclosure requirements in a criminal proceeding as follows:

(A) ... the state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information within its possession or control designated in said request:
...
(7) Any record of prior criminal convictions of persons the state intends to call as witnesses at a hearing or the trial;
...
(9) Any material or information, within the possession or control of the state, which tends to negate the guilt of the defendant as to the offense charged, mitigate the degree of the offense charged, or reduce the punishment.
...
(C) If the defense in its request designates material or information which would be discoverable under this Rule if in the possession or control of the state, but which is, in fact, in the possession or control of other governmental personnel, the state shall use diligence and make good faith efforts to cause such materials to be made available to the defense counsel....

Rule 25.03 imposes an affirmative requirement of diligence and good faith on the State to locate records not only in its own possession or control but also in the control of other governmental personnel. Merriweather v. State, 294 S.W.3d 52, 55 (Mo.banc 2009). The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Id. at 54. The evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. Id. Due process requires the prosecution to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment. Id.

6

Here, the evidence at issue is of an impeachment nature in relation to Swarts, the State's character witness. Swarts testified as to aspects of Appellant's and Vogt's characters detrimental to Appellant's theory of self-defense. Knowledge of Swarts's three felonies would have aided the defense in impeaching Swarts if the defense had been in possession of that information prior to his testimony.

The State did not have knowledge of the three felonies, as it had not availed itself of that information by conducting a background search of Swarts. Inadvertence and good faith do not excuse a failure to comply with Rule 25.03. Merriweather, 294 S.W.3d at 56. The burden is on the State to show that its search was diligent. Id. at 57. The State concedes it failed to make a diligent effort to conduct a background search of Swarts, and Swarts's three prior felonies constituted impeachment evidence against him that would have been useful to the defense.

However, the evidence was not material and Appellant was not prejudiced because even if the State had conducted the background check and produced the felony background information to defense counsel, we cannot say with certainty it would have made a difference in the trial's outcome, unlike in Merriweather, 294 S.W.3d at 57. In Merriweather, the jury found the defendant guilty of forcible sodomy based solely on the testimony of the complaining witness, T.B., who said the defendant ordered her into his car at gunpoint and forced her to perform oral sodomy. Merriweather, 294 S.W.3d at 53. The defendant said T.B. flagged down his car and offered to exchange oral sex for drugs. Id. T.B. and the defendant were the only witnesses to the encounter; there was no physical evidence. Id. However, the State failed to disclose T.B.'s criminal record, which included three prior convictions for theft. Id. Upon the defendant's Rule 29.15 post-conviction motion, the motion court ruled the defendant did not receive a fair trial and vacated the conviction under Rule 25.03. Id.

7

On appeal by the State, the Missouri Supreme Court affirmed the motion court's action, stating "credibility was pivotal" because the entire outcome of the trial rested on the credibility of the victim T.B. Id. at 57. As such, impeachment evidence of the victim's character in the form of her three prior criminal convictions was material and very well could be outcome determinative, because the victim's testimony was all the evidence the State had with regard to the charge against the defendant of forcible sodomy. Id.

In the instant case, the evidence did not come from a single source. In addition to Swarts, the victim Vogt testified, and Jason, Appellant's brother, an eyewitness to the entire event, testified about the confrontation from beginning to end, from Appellant's stomping down the basement stairs angrily yelling for Vogt, to Appellant's repeatedly punching Vogt in the head at the base of the basement steps. Moreover, Jason, who had lived with Appellant for three years prior to the assault, also testified to his brother's volatile and explosive character. As such, we do not believe Appellant was prejudiced by the failure to impeach Swarts's credibility with information about his three prior felony convictions. Such evidence would not have within a reasonable probability made a difference in the outcome of this case.

For the foregoing reasons, Point I is denied.

## Point II

Appellant claims the undisputed evidence at trial established his claim of self-defense entitling him to acquittal of assault as a matter of law.

The right of self-defense is a person's privilege to defend himself or herself against attack. State v. Mangum, 390 S.W.3d 853, 861 (Mo.App. E.D. 2013). The right is codified in Section 563.031,[3] which provides in pertinent part:

---

[3] All statutory references are to RSMo 2000.

8

1. A person may, subject to the provisions of subsection 2 of this section, use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person, unless:

(1) The actor was the initial aggressor; except that in such case his or her use of force is nevertheless justifiable provided:

> (a) He or she has withdrawn from the encounter and effectively communicated such withdrawal to such other person but the latter persists in continuing the incident by the use or threatened use of unlawful force; or
> …

To sustain Appellant's claim he is entitled to acquittal as a matter of law, undisputed and uncontradicted evidence must clearly establish he acted in self-defense. State v. Allison, 845 S.W.2d 642, 645 (Mo.App. W.D. 1992). The evidence in this case was not undisputed and uncontradicted clearly establishing he acted in self-defense against Vogt because both Vogt and Jason testified to events different from Appellant's account. Both Vogt and Jason, the only other eyewitnesses to the course of events, testified Appellant was the aggressor both verbally and physically, and instigated the entire sequence of events.

Furthermore, these conflicting accounts are for the jury to decide. The jury is responsible for weighing the reliability and credibility of the witnesses. State v. Sumowski, 794 S.W.2d 643, 645 (Mo.banc 1990). When a defendant claims self-defense, the jury is not bound by his self-serving explanation. Allison, 845 S.W.2d at 645; State v. Dulany, 781 S.W.2d 52, 55 (Mo.banc 1989). The jury may choose to accept or reject all, some or none of the testimony of any witness, including the defendant's testimony. Allison, 845 S.W.2d at 645; Dulany, 781 S.W.2d at 55.

The jury heard evidence Appellant struck Vogt and Vogt ended up in the hospital with various significant injuries inflicted upon him by Appellant, leaving him with long-lasting

9

aftereffects. Vogt and Jason both testified Vogt was minding his own business when Appellant stomped down the stairs, pounded on Vogt's door, yelled at and berated him, pursued him across the basement up the stairs, then proceeded to hit him in the head 16 or 17 times. Appellant continued to attack Vogt even when Vogt was stunned and down, until Vogt finally was able to summon the ability to grab Appellant's crotch to get Appellant to stop beating him. Appellant was unharmed. Vogt, on the other hand, was taken to the hospital by ambulance, where he was treated for multiple bruises to his face and head; a separated biceps muscle; a pulled hamstring; and a strained back. Vogt stated Appellant's punches left him stunned and seeing flashes of light. Vogt testified he had effects from the beating inflicted upon him by Appellant for months afterward. These are the facts of this case as we must view them, in the light most favorable to the jury's verdict. Allison, 845 S.W.2d at 645.

Based on the foregoing, Appellant was not entitled to an acquittal on the assault charge "due to undisputed evidence in his favor on his claim of self-defense." The State adduced sufficient evidence to make a submissible case Appellant committed third-degree assault by striking Vogt. Sistrunk, 414 S.W.3d at 596. Appellant's brother's testimony and the testimony of Vogt and Swarts was more than sufficient to overcome Appellant's version of self-defense. Further, Appellant was unharmed and Vogt went to the hospital with documented injuries. Viewing the evidence in the light most favorable to the verdict, there is sufficient evidence to support the jury's finding Appellant did not act in self-defense. Allison, 845 S.W.2d at 645. Only when undisputed and uncontradicted evidence clearly establishes self-defense is a defendant entitled to acquittal as a matter of law. Id. Where there is conflicting evidence or when different inferences can reasonably be drawn from the evidence, it is a question of fact for the jury whether the defendant acted in self-defense. Id. at 646; State v. Chambers, 671 S.W.2d

10

781, 782 (Mo.banc 1984). Appellant's reliability and credibility in light of the other evidence was for the jury to decide. <u>Allison</u>, 845 S.W.2d at 646.

This Court will affirm the trial court's denial of a motion for judgment of acquittal if, at the close of evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense. <u>Sistrunk</u>, 414 S.W.3d at 596. Here, there was sufficient evidence. Point II is denied.

Conclusion

The trial court's judgment is affirmed.

_Sherri B. Sullivan_

SHERRI B. SULLIVAN, P.J.

Roy L. Richter, J., and
Colleen Dolan, J., concur.