

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD77974 |
| | ) | |
| v. | ) | OPINION FILED: February 9, 2016 |
| | ) | |
| ANTOINE L. CLARK, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Justine E. Del Muro, Judge

Before Special Division: Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and
Zel M. Fischer, Special Judge

Following a bench trial, appellant, Antoine Clark ("Clark"), was convicted of one count of voluntary manslaughter and one count of armed criminal action by the circuit court of Jackson County, Missouri. The court found Clark guilty of shooting and killing James Ward ("Ward"), his cousin, during an altercation between Ward and several family members. Clark raises three errors on appeal: (1) the court should have excluded all of the State's evidence as a sanction for the State's discovery violations; (2) there was insufficient evidence to overcome Clark's claim of self-defense; and (3) the court

improperly relied on suppressed evidence in sentencing Clark. We affirm the judgment of the circuit court.

## Factual Background[1]

The events surrounding the death of Ward took place on Memorial Day weekend 2013. On May 26, 2013, Stephen Ramsey, Sr. ("Ramsey"), Ward's great-uncle, was hosting a family barbeque. While at the barbeque, Ramsey received a call from his brother, David Ramsey, that Ward was at David Ramsey's house with an "A.K." type gun looking for a different stolen gun. Ramsey went to his brother's house to confront Ward. He could see that Ward had two guns under his shirt plus the stolen gun. The two argued about the stolen gun. Ramsey attempted to take the guns from Ward by force, and Ward pulled two guns on Ramsey, threatening him.

Ramsey returned home and called family members regarding the incident with Ward. Ward followed Ramsey to his house, and the two resumed arguing outside the home. Ward again pulled two guns on Ramsey. Several family members, including Clark, arrived at the Ramsey home. Several witnesses testified that Ward appeared to be "on something" and behaving unusually.

Ward charged at Clark and began hitting him either with his fists or the guns. The two struggled; Clark shot Ward and he fell backwards. Clark then walked around Ward firing multiple shots into his body. In total, Clark shot Ward twelve times. Witnesses described Clark's demeanor as calm during the shooting.

---

[1] In a criminal case we view the evidence in the light most favorable to the verdict. *State v. Perry,* 275 S.W.3d 237, 242 (Mo. banc 2009). We accept as true all facts and inferences favorable to the verdict, and disregard evidence and inferences to the contrary. *State v. Oliver*, 293 S.W.3d 437, 444 (Mo. banc 2009).

Neighbors witnessed the shooting or heard the gun shots and came to the house to assist Ward until emergency personnel arrived. One of the neighbors, Kevin Dickens ("Dickens"), kicked away one of the two guns near Ward, and kicked or threw the other gun to the side. All three guns were missing by the time police arrived.

Clark and his mother left the scene before police arrived. He was later arrested at his girlfriend's home in Kansas.

Pursuant to an agreement with the State, Clark waved his right to a jury trial in exchange for a reduction of his charge from murder in the second degree to voluntary manslaughter. The court held a bench trial. The defense did not deny that Clark had shot Ward but tried to establish that Clark had acted in self-defense. Clark did not testify. Ultimately, the trial court found Clark guilty of both voluntary manslaughter and armed criminal action, sentencing him as a prior and persistent offender to concurrent terms of twelve years imprisonment for manslaughter and three years for armed criminal action.

This appeal follows.

## Discussion

## I.

Clark raises three points on appeal. He alleges in his first point that the circuit court erred in failing to exclude all of the State's evidence as a sanction for the State's discovery violations. Clark's argument is two-fold. First, he contends that the trial court should have excluded all of the State's evidence as a sanction because he suffered fundamental unfairness in receiving late disclosure of certain evidence. Second, Clark argues that the court's chosen sanction--offering the defense a continuance to review

3

discovery--was impermissible because it forced Clark to choose between conflicting constitutional rights including his right to a speedy trial. We begin with Clark's claim that all of the State's evidence should have been excluded.

**A.**

In review of discovery violations, we must answer two questions: first, whether the State's failure to disclose the evidence violated Rule 25.03, and second, if the State violated Rule 25.03, then what is the appropriate sanction the trial court should have imposed. *State v. Campbell,* 356 S.W.3d 774, 779 (Mo. App. E.D. 2011). Review is for abuse of discretion. *State v. Wolfe,* 13 S.W.3d 248, 259 (Mo. banc 2000). "The trial court has discretion to impose sanctions for discovery violations under Rule 25.03." *State v. Taylor,* 298 S.W.3d 482, 502 (Mo. banc 2009) (citation omitted). "A trial court's denial of a requested sanction is an abuse of discretion only where the admission of the evidence results in fundamental unfairness to the defendant." *Id.* "Fundamental unfairness occurs when the state's failure to disclose results in defendant's 'genuine surprise' and the surprise prevents meaningful efforts to consider and prepare a strategy for addressing the evidence." *State v. Thompson,* 985 S.W.2d 779, 785 (Mo. banc 1999) (citation omitted).

*State v. Zetina-Torres*, 400 S.W.3d 343, 353-54 (Mo. App. W.D. 2013).

Rule 25.18 governs sanctions and provides:

If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to make disclosure of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances. Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court.

Clark made a formal request for discovery on June 10, 2013. The State responded that it had an "open file" policy[2] in the prosecutor's office under which Clark could examine discovery, but the State also made some initial disclosures. A pretrial order was entered on June 20, 2013, requiring both parties to produce "all material information contemplated by Supreme Court Rules 25.03 and 25.05 within 10 days." The State made no objection to this requirement and produced documents to the defense on August 22, August 30, October 1, December 9, and December 27, 2013.

On appeal, Clark argues that the court erred in not sanctioning the State because the State failed to produce an "Accurant Report" compiled by the police, Ward's pending criminal charges and previous arrest record prior to trial, and the in-car police videos and pocket microphone recordings of the responding officers and certain Kansas police officers as required by Rule 25.03.

> "The basic object of the discovery process in criminal proceedings is to permit [the] defendant a decent opportunity to prepare in advance of trial and avoid surprise, thus extending to him fundamental fairness which the adversary system aims to provide." *State v. Scott,* 647 S.W.2d 601, 606 (Mo. App. W.D. 1983). "Where the state has failed to respond promptly and fully to the defendant's disclosure request, the question is whether the failure has resulted in *fundamental unfairness or prejudice to the defendant.*" *Id.*

---

[2] The record does not indicate what records were open and available to the defense under the "open file" policy. Regardless, it is clear that the State failed to fully comply with the production ordered by the court in response to the June 10th motion. Further, the KCPD "case detective" John Mattivi testified that the KCPD only puts "relevant" items into the case file that is sent to the prosecutor and that the "case detective" is responsible for determining what is "relevant" and what is not included in the case file. Thus, the Jackson County Prosecutor's "open file" policy only discloses what the "case detective" has deemed to be relevant. The State's duty of disclosure includes not only information that is known to the prosecutor but information which may be learned through reasonable inquiry. *State v. Henderson,* 410 S.W.3d 760, 765 (Mo. App. E.D. 2013). This includes the State's duty to discover and produce information in the possession and control of other governmental personnel including the police department. *State v. Jackson,* 353 S.W.3d 657, 659 (Mo. App. S.D. 2011). We urge the Jackson County Prosecutor's office and the KCPD to immediately update their policies in regard to what is included in the prosecutor's file and how they comply with discovery requests. The prosecutor cannot delegate its duty of disclosure to a police detective's determination of what may or may not be "relevant".

*State ex rel. Jackson Cty. Prosecuting Attorney v. Prokes*, 363 S.W.3d 71, 76 (Mo. App. W.D. 2011).

"Although *Brady* [*v. Maryland*, 373 U.S. 83 (1963)] informs [the] Court's judgment and states a basis for a finding of denial of due process, the law subject to interpretation here is Rule 25.03, which governs disclosure requirements in criminal proceedings." *Merriweather v. State*, 294 S.W.3d 52, 55 (Mo. banc 2009). "Rule 25.03 was a criminal discovery rule promulgated in 1973, after *Brady* was decided. Rule 25.03, unlike *Brady*, imposes an affirmative requirement of diligence and good faith on the state to locate records not only in its own possession or control but also in the control of other governmental personnel." *Id*.

We first consider whether the State failed to disclose evidence under Rule 25.03. Clark alleges that the State failed to disclose three pieces of evidence to the defense in violation of Rule 25.03. Clark first alleges that he should have received a copy of the Accurant Report run by the officers while they were attempting to locate Clark following the shooting. The Accurant Report is obtained from a subscription service through LexisNexis. A party enters the name of an individual and the search engine produces names and addresses of known associates. The document was discussed at the January 16, 2013, Suppression Hearing held immediately before trial. At that time, defense requested its production and an officer produced a copy of the report for review.[3]

---

[3] Questions were raised during trial as to whether the defense had received the entire Accurant Report.

The only discovery ordered in this case was pursuant to the pretrial order entered on June 20, 2013, which required the State to disclose all information contemplated by Rule 25.03. Clark does not identify how or why the Accurant Report was required to be produced under Rule 25.03. The trial court reviewed the report and found that it was an internal document created merely to assist with locating Clark and was not subject to mandatory production requirements. Clark offers no argument as to why that ruling was incorrect. Absent argument as to *why* this document was required to have been produced under Rule 25.03, there is no error for this court to review regarding whether appropriate sanctions should be imposed for failure to produce the report.[4]

Clark also alleges that the State violated Rule 25.03 by failing to produce a record of Ward's criminal history prior to trial. Just prior to his death, Ward was wearing a court ordered monitoring device on his ankle due to a tampering charge unrelated to the present case. Again, Clark fails to state which subpart of Rule 25.03 required production of the victim's outstanding criminal charges. We presume that Clark's argument is related to subsection (A)(9) of Rule 25.03 requiring the production of "[a]ny material or information, within the possession or control of the state, which tends to negate the guilt of the defendant as to the offense charged, mitigate the degree of the offense charged, or reduce the punishment." Clark argues that under *State v. Gonzales*, 153 S.W.3d 311, 312-14 (Mo. banc 2005), information regarding Ward's reputation for violence--including

---

[4] In discussing the State's failure to produce the Accurant Report, Clark comments that Officer Jason Coti testified that he shredded his initial interview notes after he prepared his reports. There is no indication that this was done to thwart the defense or was a violation of any policy. Clark does not argue that the notes were discoverable or that he was prejudiced by their destruction. Further Clark makes no argument that all of the material contained within the officer's notes was not included in the reports that were disclosed. As such, we will not address Officer Coti's notes.

7

pending criminal charges and arrests--is relevant to Clark's claim of self-defense. *Gonzales* holds that evidence of a victim's reputation for violence is logically relevant to a self-defense claim and can be admitted at trial. *Id.* at 312-13. It does not hold that the criminal history of the victim must be produced under Rule 25.03--the only discovery order the circuit court entered. *Id.* In this case, Clark did not establish that Ward's pending criminal charges would have negated Clark's guilt or mitigated the degree of the offense or reduced his punishment. Therefore, he has not established that it was required to be disclosed pursuant to Rule 25.03(A)(9).[5]

Finally, Clark alleges that the State violated Rule 25.03 by failing to turn over the in-car police videos and officer pocket recordings following the shooting. The State concedes that this information should have been produced.[6] The State, however, contends that Clark suffered no prejudice by not receiving the videos prior to trial and, as a result, the Court's sanction was appropriate. The videos were produced to Clark during the trial, but not before trial in response to written discovery.

Clark argues that the decision not to produce videos was willful, citing to the State's answers to the circuit court:

The Court: Did you ask [the police] if there were any videos?

[State]: I did not ask for any videos.

---

[5] Although Clark's brief indicates he was aware of Ward's pending criminal charges--although not the nature of such charges--there is no indication in the record that the court ordered this information produced beyond a general production order under Rule 25.03.

[6] Although the State does raise arguments as to the proper form in which this material should have been produced. Under Rule 25.03(A)(8), the defense was entitled to disclosure in the "form of a written statement by counsel for the state."

8

The State, however, went on to explain that generally the police report would indicate a video existed alerting her to request the video. Although the court later noted that the State should have been aware of the videos because dashboard cameras begin recording when lights and sirens are activated on a police car, the court made no specific findings that the State was willfully withholding material evidence.

Further, even if the recordings were intentionally withheld, Clark fails to show how the unproduced materials or earlier production of the materials would have aided in his defense. Clark's allegations of prejudice all stem from an inability to ascertain the conversations on the video and audio records and an inability to "wash" them so that they could be clearly presented to the court. Yet, on appeal, Clark fails to identify anything on the recordings that, had he had additional time to properly review, would have assisted in his defense.

The only colorable argument that Clark presents is that witness David Mott ("Mott"), changed his story from his initial interview with police, and the recordings of that interview *may have* assisted with impeachment. Initially, Mott informed officers that he had not seen the shooting but his trial testimony was that he witnessed the entire shooting.

> [Defense]: When the very first police officer interviewed you, where were you having the barbecue with your family? Was it in front of the house? I don't see the barbecue out there.
>
> [Neighbor]: No, sir, I was in the back of the house.

Q: You told the first officer that you were having a barbecue with your family which is in the back of the house, when you heard gunshots in front of the house . . . you went to investigate and observed the listed suspect standing over another black male firing shots downward into him. Do you remember telling the officer that?

A: Yes.

Q: According to what you told the officer, right after it happened, you're in the backyard at the barbecue, you hear gunshots and then you go to investigate?

A: No, that's not what happened.

Q: Well, I just asked you if that's what you told the officer and you said yes.

A: I hear you. And you did. And that's actually not the case. I was standing in the window before any shots were fired. Because I saw it from one to eight.

While certainly the fact that an eye witness changed his testimony is relevant, Clark already had that information prior to trial. He did not discover that information from the recordings. Further, there is still no indication that Mott's interview was captured on the recording and could have been heard and understood after the recordings were "washed."

The trial court itself noted that the State's discovery failures did not appear to result in any prejudice to Clark. When the court questioned Clark's attorney regarding harm, the only basis for prejudice that was articulated was that a washing of the recordings could have *potentially* led to pertinent evidence. Yet, even now on appeal, there is no indication that these recordings did, in fact, have any evidence that would have aided the defense. The trial court attempted to address Clark's claims of prejudice-- an inability to fully hear the recordings--by offering to grant a continuance to allow the

10

recordings to be "washed." We find that the offered resolution was reasonable under the circumstances.

Clark does not demonstrate that the Accurant Report and the open criminal charges were subject to discovery under Rule 25.03, nor does he demonstrate prejudice stemming from the State's failure to disclose these items. While the State concedes the police videos and records should have been produced, Clark failed to establish that he suffered fundamental unfairness due to the State's discovery violations.

**B.**

In addition to claiming that the trial court's sanction was insufficient, Clark alleges that the offered continuance forced him to choose between his Fourteenth Amendment rights to due process and his Sixth Amendment right to a speedy trial.

Clark argues that while he could have accepted the court's offer of a continuance to allow him to wash the audio, he would have had to give up a speedy trial to do so. There is no evidence to support this argument.

"The right to a speedy trial is provided by the Sixth Amendment of the United States Constitution and article I, section 18(a) of the Missouri Constitution." *State v. Sisco*, 458 S.W.3d 304, 313 (Mo. banc 2015). "The federal and Missouri constitutions provide equivalent protection for a defendant's right to a speedy trial." *Id.* (internal quotation marks omitted).

"In analyzing whether a defendant's rights to a speedy trial have been violated, courts consider and balance all of the circumstances, and weigh four factors as set forth by the United States Supreme Court in *Barker v. Wingo:* (1) the length of delay, (2) the

11

reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant." *State v. Greenlee,* 327 S.W.3d 602, 611 (Mo. App. S.D. 2010). None of these four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. *Barker v. Wingo,* 407 U.S. 514, 533 (1972). "The [*Barker*] test is obviously not designed to supply simple, automatic answers to complex questions, but rather, it serves as a framework for a difficult and sensitive balancing process." *State v. Ferdinand,* 371 S.W.3d 844, 851 (Mo. App. W.D. 2012) (abrogated on other grounds) (internal quotation omitted). "Thus, the right necessarily depends upon the facts and circumstances of each case." *Id.; see also Vermont v. Brillon,* 556 U.S. 81, 91, 93 (2009) ("*Barker's* formulation necessarily compels courts to approach speedy trial cases on an *ad hoc* basis.... The factors identified in *Barker* have no talismanic qualities; courts must engage in a difficult and sensitive balancing process.") (internal quotations omitted).

The record does not include any indication as to whether delaying the proceedings to review late discovery would have resulted in a substantial delay. At the time of the trial, the court offered Clark the opportunity to continue the trial until discovery could be fully reviewed:

> THE COURT: The good thing about this is [the] case hasn't closed. It's bench-tried. You don't have a jury here waiting, so we can take longer time. So if you want, I encourage you to just take this home [to] review, do whatever you want to get a clear sound, come back and tell me if you want to revisit with witnesses and we'll continue this trial.

12

[Defense Counsel]:  Can I talk to my client?  Because while that's fine for me, my client is sitting in jail.

THE COURT:  You asked for a speedy trial.

[Defense Counsel]:  Right.

THE COURT:  I'm well aware of that.  My first week back and here we are. So I think you're doing well in that context, but I'm honestly – I've got to look at all of this now and that's not going to take me an hour.  And I suspect there are other trials next week.  So this case isn't going away today.
. . . .

[Defense Counsel]:  Judge, we spotted through the video, my client and I, and I think his position is he would like to get this over with.

No questions were asked about the length of a continuance.  In effect, Clark's attorney made no inquiry as to whether Clark's Sixth Amendment rights would be affected.  Thus, the trial court made an effort to effectively balance Clark's Fourteenth and Sixth Amendment rights.  However, Clark rejected that opportunity and chose to continue with trial absent full discovery.

Clark relies heavily on *State v. Zetina-Torres*, 400 S.W.3d 343 (Mo. App. W.D. 2013).  In *Zetina-Torres* this Court reversed and remanded to the trial court for retrial because the State failed to provide all discovery to the defense.  *Id.* at 353-54.  In that case, the late-disclosed evidence materially affected the way the State presented its case and prejudiced the defendant in presenting his defense.  *Id.*  We held that under those facts the trial court abused its discretion in refusing to either continue the case to allow the defendant to prepare for the newly disclosed evidence or, in the alternative, to refuse to allow the State to use the newly disclosed evidence in the trial.  *Id.* at 356-57.  That is

13

not this case. In *Zetina-Torres* the defendant suffered significant discovery abuses and showed clear prejudice resulting from those violations. In the case at bar, although the State failed to comply with Rule 25.03, the deficiencies were corrected and the defense was given an opportunity to review the discovery and offered a delay in the trial if it so chose.

Similarly, Clark relies on *State v. Samuels*, 965 S.W.2d 913, 917 (Mo. App. W.D. 1998), which is also readily distinguishable. In *Samuels*, the defendant's testimony given at his 29.15 hearing was used against him at his retrial. *Id.* at 915. The court found that it was an error for the trial court to allow such testimony because it forced the defendant to choose between asserting his Sixth Amendment right to effective counsel and his Fifth Amendment privilege against self-incrimination. *Id.* at 916. Relying on *Simmons v. United States*, 390 U.S. 377 (1968), this Court held that Samuels could not be forced to surrender one constitutional right in order to assert another. *Id.* at 917-20.

In this case, there is no indication that there was ever *actual* tension between Clark's Sixth Amendment right to a speedy trial and also his Fourteenth Amendment right to due process in discovery. When determining whether there was a Sixth Amendment violation under *Barker*, "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Dillard v. State*, 931 S.W.2d 157, 162 (Mo. App. W.D. 1996) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Where there is minimal delay of less than sixth months, there is no presumption of prejudice. *Id.* While a delay of over eight months is usually considered prejudicial. *Id.* There is no indication in this case that Clark had been subject to prior

14

delays. Nor, as we noted above, is there any indication that a delay to review and wash the recordings would have caused a delay sufficient to trigger a presumption of prejudice and require a more stringent Sixth Amendment speedy-trial inquiry.

To the extent that the State failed to provide Clark with required discovery, he has failed to show any actual prejudice resulted, constitutional or otherwise. As such, it cannot be said he suffered a "fundamental unfairness" such that this Court will disturb the trial court's decision not to impose sanctions on the State by withholding evidence. Clark's first point on appeal is denied.

## II.

Clark's second point on appeal alleges that the court erred in both overruling his Motion for Judgment of Acquittal at the close of State's evidence and in finding him guilty of voluntary manslaughter and armed criminal action because there was insufficient evidence to show that he was not acting in self-defense. Clark relies on a collection of statements the court made to argue that it was unreasonable for the court to find that he was not acting in self-defense and that it relied on inadmissible evidence to do so.

> In a judge-tried case, our review of a trial court's ruling on a motion for judgment of acquittal is for whether there was sufficient evidence from which the trial court could have found the defendant guilty beyond a reasonable doubt. *State v. Brushwood,* 171 S.W.3d 143, 146 (Mo.App.2005). "In making that determination, we accept as true all evidence tending to prove guilt together with all reasonable inferences that support the finding and ignore all contrary evidence and inferences." *Id.* "We do not weigh the evidence or decide the credibility of witnesses, but defer to the trial court." *Id.*

15

*State v. Henderson*, 311 S.W.3d 411, 413 (Mo. App. W.D. 2010). Similarly, when reviewing the sufficiency of the evidence in a court-tried criminal case, we view all reasonable inferences "in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). "The function of the reviewing court is not to reweigh the evidence, but to determine if the conviction is supported by sufficient evidence." *State v. McCleod*, 186 S.W.3d 439, 443 (Mo. App. W.D. 2006).

> To support a claim of self-defense, a defendant must show:
>
> (1) an absence of aggression or provocation on the part of the defender; (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death; (3) a reasonable cause for the defendant's belief in such necessity; and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life." *State v. Thomas,* 161 S.W.3d 377, 379 (Mo. banc 2005). "Once the defendant has injected the issue of self-defense into the case, the burden shifts to the state to prove the absence of self-defense beyond a reasonable doubt." *State v. Allison,* 845 S.W.2d 642, 645 (Mo.App.1992).

*Henderson,* 311 S.W.3d at 414..; § 563.031. It is not disputed in this matter that Clark properly injected the issue of self-defense, and the burden was on the State to prove the absence of self-defense beyond a reasonable doubt.

A person may only use deadly force--in limited exception--when "he or she reasonably believes that such deadly force is necessary to protect himself or herself or another against death, serious physical injury, or any forcible felony." *Id.* quoting §563.031.2(1). "A person is entitled to acquittal as a matter of law on the basis of self-defense only if there is undisputed and uncontradicted evidence clearly establishing self-

16

defense." *State v. Dulaney*, 989 S.W.2d 648, 651 (Mo. App. W.D. 1999). The trial court requested and accepted a self-defense instruction[7] but ultimately held that Clark was not acting in self-defense.

The defense presents multiple reasons why the shooting was justified based on self-defense noting Ward's erratic behavior (possibly drug induced) just prior to the shooting, Ward's possession of multiple guns, Clark's right to use as much force as he deemed necessary to protect himself, and Ward's responsibility as the aggressor. These facts, however, are not inconsistent with the trial court's findings.

To demonstrate self-defense, a party must show a "real or apparently real necessity" to kill as well as showing such party has taken all steps to avoid the need to kill.[8] *Henderson*, 311 S.W.3d at 414. In this case, the trial court heard witness testimony that Clark shot Ward twelve times, most of which while Ward was lying on the ground. As the court noted, Clark did not simply shoot from where he was standing but witnesses[9] testified that Clark walked around Ward shooting into his body as he lay on the ground. The defense highlights the fact that Ward still had control of two guns during the shooting. Ramsey's neighbor, Dickens, however, was able to remove Ward's guns from his control prior to rendering assistance; thus, a reasonable inference is that weapons

---

[7] Although a bench tried case, the circuit court requested both parties to provide verdict directors and jury instructions on self-defense.

[8] Missouri recognizes the "castle doctrine" in Sections 563.031.2 and 563.031.3. Section 563.031.2(2) states that a person is justified in using deadly force against another who unlawfully attempts to enter a dwelling occupied by the person exercising such force. Subsection 563.031.3 states that a person has no duty to retreat from the residence or private property that is "owned or leased by such individual." In this case, Clark was outside the residence of his great-uncle and it is not alleged that he was residing there or had any ownership interest. As such, the castle doctrine is not applicable.

[9] Clark again argues that the witnesses should have been excluded as sanction for the State's discovery abuses. We have addressed that issue fully in point one and do not repeat that analysis.

17

were not within Ward's control at the end of the shooting. The autopsy showed that during at least part of the time while he was being shot, Ward was in a defensive position.

In *State v. Henderson*, the defendant alleged that she feared the victim was going run over her or shoot her and thus she acted in self-defense. 311 S.W.3d at 414. The evidence showed, however, that she "did not do everything in her power to avoid firing upon [the victim] because the evidentiary photographs and diagrams support an inference that she could have escaped the moving truck by getting behind the ice machines outside the store, running into the store, or simply running away, without opening fire." *Id*. In this case, the evidence supported a reasonable inference that Clark could have stopped firing at Ward when he fell to the ground and removed the guns from Ward's possession as the neighbor did. Instead, Clark walked around Ward as he lay on the ground and fired multiple additional times into him. Based on the facts of this case, we find that it was a reasonable inference for the trial court to find that there was no need for Clark to continuing to fire down into Ward when he was incapacitated and in a defensive position.

Further, after shooting Ward, Clark did not render assistance, call for an ambulance, or even stay on the scene to tell police his version of events. Clark, instead, fled the scene before the police arrived. "[F]light can be considered as indicative of [one's] consciousness of guilt." *State v. Rodney*, 760 S.W.2d 500, 504 (Mo. App. W.D. 1988).

Clark seizes on a statement the trial court made at sentencing referring to the facts surrounding the shooting as "fuzzy." Clark takes this word and crafts an argument that somehow the court should have found that he was acting in self-defense if the court did

18

not clearly understand what happened. Or, that the court could not find Clark guilty "beyond a reasonable doubt" if the court was "fuzzy" as to the events. First, we note, as is discussed below, this statement was made in sentencing and does not reference the court's finding of Clark's guilt.[10] Even were this Court to consider the later statement made at sentencing, we find the trial court uses the term "fuzzy" to refer to events immediately preceding the shooting and not the shooting itself. There was conflicting testimony as to whether Ward attacked Clark with his fists or with a gun. But the testimony regarding the shooting itself, including Clark's calm demeanor, shooting the victim twelve times, many after he was already down on the ground, and his flight from the scene, was consistent and unchallenged. In context, we find that the court was clear on the facts of the shooting and could find that Clark was not acting in self-defense.

Second, because the court acknowledged that the events immediately preceding the shooting were unsettled, it would have been improper for the court to enter a judgment of acquittal at the close of the State's case as Clark argues. Such a judgment is only proper where the evidence is "undisputed and uncontradicted." *Henderson*, 311 S.W.3d at 414. Neighbor witnesses and the autopsy results support a version of events in which Clark did not need to use deadly force because Ward was on the ground in a defensive position when Clark walked toward and around Ward continuing to shoot downward into Ward. Under this version of events, the fact finder could reasonably

---

[10] Clark's opening brief provides citation to the transcript from trial on January 16, 2014. However, the citation given contains no relevant statement from the trial court. The quotations of "fuzzy" and the court's statement of "I would be okay with unloading 12 shots" are both from the Sentencing Hearing held June 12, 2014. We can find no such similar statements made during the guilt phase of the trial. These statements are not relevant to the court's decision on guilt or Clark's self-defense claim because they occurred several months after the court had adjudicated Clark's guilt.

19

conclude that Clark was not entitled to protections of Section 563.031 because Clark used more force than was reasonably necessary in violation of the third prong of the test.

Finally, Clark argues that the trial court itself stated that Clark was justified in the shooting. Clark's brief provides no quotation attributable to the trial court during the guilt phase of the trial. It appears that Clark is referring to statements made by the court in sentencing which are more properly considered in Clark's final point on appeal addressed below.

"Where there is conflicting evidence or when different inferences can reasonably be drawn from the evidence, whether the defendant acted in self-defense is a question for the trier of fact." *Henderson*, 311 S.W.3d at 414 (citing *State v. Allison*, 845 S.W.2d 642, 646 (Mo. App. W.D. 1992)). Even if we grant Clark reasonable inferences surrounding the disputed nature of the shooting, the trial court is the proper trier of fact and determines whether the circumstances of this case justify self-defense, and the trial court found that, in this case, they did not.

Under our standard of review, we view the facts in the light most favorable to the verdict. We find that there were sufficient facts upon which the circuit court could have found that Clark was not acting in self-defense when he shot Ward.[11]

Clark's second point on appeal is denied.

---

[11] Clark also alleges that the court relied on suppressed evidence in rendering its verdict. In support, he again cites to statements made by the trial court at sentencing despite citation to the trial transcript. We find no support for the claim that the trial court relied on suppressed evidence during the guilt phase of trial. A claim that the court improperly relied on suppressed evidence in sentencing is duplicative of Clark's final point on appeal and thus we will review his argument there.

20

**III.**

Clark's final point on appeal alleges that the court erred in sentencing him as an aggravated offender because it improperly relied on suppressed evidence in sentencing.

No objection was raised during sentencing so our review is for plain error. Rule 30.20. "The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review." *State v. Beggs*, 186 S.W.3d 306, 311 (Mo. App. W.D. 2005). "In determining whether to exercise its discretion under plain error review, the appellate court looks to determine whether on the face of the appellant's claim substantial grounds exist for believing that the trial court committed a 'plain' error, which resulted in manifest injustice or a miscarriage of justice." *State v. Mickle*, 164 S.W.3d 33, 58 (Mo. App. W.D. 2005).

> Plain error review involves two steps. First, the court must determine whether the trial court committed an evident, obvious and clear error, which affected the substantial rights of the appellant. *Id.* at 58–59. As in the case of review for "regular" error, not every obvious error found in plain error review mandates reversal. *Id.* at 59. In the case of review for "regular" error, to be reversible, the found error must have prejudiced the appellant. *Mickle,* 164 S.W.3d at 59. Likewise, in the case of review for plain error, the error must have prejudiced the appellant, except such prejudice must rise to the level of manifest injustice or a miscarriage of justice. *Id.* Thus, even if obvious and clear error is found in the first step of the review, the second step of plain error review requires the court to determine whether manifest injustice or a miscarriage of justice resulted therefrom. *Id.*

*Beggs*, 186 S.W.3d at 311-12 (Mo. App. W.D. 2005).

During sentencing, the court stated: "Being found asleep in an apartment in Kansas. That's an aggravating circumstance." Clark alleges that it was improper for the court to consider this fact because the details surrounding his arrest in Kansas were

21

suppressed. We find that a complete review of the court's statement demonstrates that it was not the location of Clark that was problematic in the court's mind but, rather, his leaving the scene following the shooting. At sentencing, the court stated that there were two factors relevant to sentencing which the court found troubling as to the proper sentence. The first factor was the "calmness" with which the shooting occurred, as Clark shot Ward twelve times while walking around him and shooting down into his body. The second aggravating factor was Clark's failure to remain at the scene. The trial court's full statement was:

> The second fact is that you left. You left. You got in your car and you left. Your mother left. She tore off. That's the evidence. That's hugely problematic. Leaving. Being found asleep in an apartment in Kansas. That's an aggravating circumstances. You know, if it's self defense, if you think you're in the right, you don't leave the scene. But you did.

When read in context it is clear that the court was sentencing based on Clark's decision to flee the scene. While the court mentioned Clark's presence in Kansas. it was not the focus of the court's statement; rather, the aggravating fact was Clark left the scene. Clark's reference in his brief that Clark's location was "pivotal" to the court's decision is inaccurate. The court's full statement accurately reflects that the court relied on Clark's fleeing the scene as an aggravating circumstance and there was no error in doing so.

Further, we find that even if the court relied in some way on the fact that he was found asleep in Kansas, under our plain error review, we cannot say that Clark suffered manifest injustice. The circuit court spent significant time recounting how the shooting occurred--specifically referencing Clark's calmness and his decision to flee prior to police arriving. We cannot say that, given the other details of this crime, the court's statement

22

referencing suppressed evidence warrants reversal. *See State v. Harris*, 2015 WL 5602138, -- S.W.3d ---, *8 (Mo. App. E.D. Sept 22, 2015) ("vague references to other uncharged crimes during trial were insufficient to warrant reversal").

Clark's third point on appeal is denied.

## Conclusion

For the reasons stated above, we affirm.

_____
Gary D. Witt, Judge

All concur