

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | |
|---|---|
| STATE OF MISSOURI, | ) ED105951 |
| | ) |
| Respondent, | ) Appeal from the Circuit Court |
| | ) of the City of St. Louis |
| v. | ) 1522-CR00176-01 |
| | ) |
| RAMON D. DEMERY, | ) Honorable David L. Dowd |
| | ) |
| Appellant. | ) Filed: February 26, 2019 |

### Introduction

Ramon D. Demery (Defendant) appeals his convictions and sentences for murder in the second degree, armed criminal action, and two counts of unlawful use of a weapon, arguing (1) the State failed to disprove Defendant acted in self-defense and (2) there was insufficient evidence to support the jury's verdict of murder in the second degree and armed criminal action. We affirm.

### Background

The evidence at trial in the light most favorable to the judgment was as follows.[1] Defendant and Tameka Whalen (Whalen) dated for eight months in 2013 and 2014. As of January 14, 2015, they were no longer together. Nonetheless, Defendant visited Whalen a few times each week. Whalen was pregnant by Defendant.

---

[1] State v. Whalen, 49 S.W.3d 181, 184 (Mo. banc 2001).

1

Several months prior to January 14, 2015, Leon Jason Rivers (Rivers) had reconnected with Whalen and—for the first time—met D. R., his thirteen-year-old biological son. Rivers and Whalen made arrangements for Rivers to get to know D.R.; Rivers and D.R. had met three times prior to January 14, 2015.

On January 14, 2015, Rivers visited Whalen and D.R. at their home. Whalen shared the house with a total of eight children and grandchildren. Rivers and Whalen were in the laundry room, located at the back of the house, washing clothes and smoking marijuana. At one point, D.R. left the house through the front door to take out the trash.

While D.R. was taking out the trash, Defendant entered the house through the front door and spoke to Whalen's children and grandchildren. Whalen recognized Defendant's voice and began to leave the laundry room. When Defendant saw Whalen and Rivers in the laundry room, he turned around and walked back toward the front door. Whalen followed Defendant and entered the kitchen. Defendant turned back around and pulled a silver revolver with a white handle from his pocket, placing it against Whalen's head. The Defendant stated, "Bitch, I'll kill him. I'll kill you, him, and myself." The children started running everywhere.

With the revolver placed against her head, Whalen asked Defendant not to shoot. Rivers tried to leave the house, but Defendant argued with Rivers. Whalen broke away from Defendant and ran out of the house. At this point, D.R. was walking back toward the house. Whalen screamed, "Oh, your daddy got a gun to his head." While on the front porch, Whalen told D.R. to tell Defendant, "Don't shoot my dad." Whalen then fled to a neighbor's house, called the police, and hid in the closet.

Meanwhile, D.R. entered the house and made his way toward the back laundry room. D.R. saw Defendant and Rivers talking. Defendant had the silver revolver with a white handle pointed

2

at Rivers. D.R. told Defendant that Rivers was his "daddy." Defendant and Rivers continued talking and moved closer to the front door. The revolver remained trained on Rivers. Defendant remained closest to the door. Defendant told Rivers, "Get on your knees." Rivers then grabbed a glass ashtray and tried to knock the revolver from Defendant's hand three times. During the third attempt, the revolver fired. Defendant fled the scene.

Police officers responded to the scene. Based on the information gathered, police officers identified Defendant as the probable shooter. The next day, police officers arrested Defendant while in possession of a .38 caliber revolver with a pearl handle and nine rounds of .38 ammunition. Forensic experts determined that Rivers died from a single gunshot wound to the chest and that Defendant's revolver fired the bullet that killed Rivers.

The State charged Defendant with murder in the first degree, armed criminal action, and two counts of unlawful use of a weapon. Defendant testified at trial. He acknowledged owning the revolver and admitted bringing it fully-loaded to Whalen's house. Defendant testified he drew the revolver prior to Rivers picking up the ashtray because Rivers was "coming at" him in an aggressive manner. Defendant stated he was afraid that Rivers, who was physically larger than Defendant, would hit him with the ashtray, take the revolver, and kill him. Defendant stated he shot Rivers while Rivers was swinging the ashtray.

The trial court instructed the jury on murder in the first degree along with the lesser included charges of murder in the second degree, felony murder in the second degree, and involuntary manslaughter. Because Defendant injected the issue of self-defense, the trial court also instructed the jury on self-defense. The jury found Defendant guilty of murder in the second degree, armed criminal action, and two counts of unlawful use of a weapon. The trial court sentenced Defendant as a prior and persistent offender, as follows: Count I life imprisonment for

3

murder in the second degree, Count II thirty years imprisonment for armed criminal action to be served concurrent with Count I, and Counts III and IV five years imprisonment for each conviction of unlawful use of a weapon to be served consecutively to each other and consecutive to Counts I and II. This appeal follows.

## Discussion

Defendant raises two points on appeal. First, he argues the State failed to disprove Defendant acted in self-defense. Second, Defendant contests the sufficiency of the evidence to support his convictions of murder in the second degree and armed criminal action. We affirm.

## Standard of Review

Our review of a challenge to sufficiency of the evidence to support a conviction is limited to a determination of "whether the State introduced sufficient evidence at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt." State v. Anderson, 386 S.W.3d 186, 189-90 (Mo. App. E.D. 2012) (quoting State v. Bateman, 318 S.W.3d 681, 686-87 (Mo. banc 2010)). We accept as true all evidence and reasonable inferences favorable to the verdict, disregarding contrary inferences "unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." Id.

## Point I

Defendant's first point on appeal is that the State presented insufficient evidence at trial to disprove Defendant acted in self-defense. We disagree.

Regarding self-defense, "[a] person may . . . use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or

4

herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person." Section 563.031(1).[2] To claim self-defense, a defendant: (1) must not have been the aggressor in the assault; (2) must have reasonable grounds for the belief that he is faced with immediate danger of serious bodily injury; (3) must not use more force than that which appears reasonably necessary; and (4) must do everything in his power consistent with his own safety to avoid the danger. State v. Habermann, 93 S.W.3d 835, 837 (Mo. App. E.D. 2002). The defendant bears the initial burden of showing self-defense is supported by the evidence, at which point the burden shifts to the State to prove lack of self-defense beyond a reasonable doubt. Section 563.031(5); see also State v. Bruner, 541 S.W.3d 529, 534-35 (Mo. banc 2018).

Here, the State presented sufficient evidence from which a trier of fact could have found lack of self-defense beyond a reasonable doubt. First, regarding whether Defendant was the initial aggressor, Whalen testified that Defendant entered the house and drew a revolver on Whalen and Rivers. Defendant himself testified he drew the revolver before Rivers even picked up the ashtray.

Second, regarding whether Defendant had reasonable grounds for believing that he was faced with immediate danger of serious bodily injury, D.R. testified Rivers grabbed an ashtray and attempted to knock the revolver from Defendant's hand, but only after Defendant pulled the revolver out. Defendant testified he was afraid that Rivers, who was physically larger than Defendant, would hit him with the ashtray, take the revolver, and kill him. "The reasonableness of a defender's belief in the necessity of using deadly force is generally a question for the jury." State v. Chambers, 671 S.W.2d 781, 783 (Mo. banc 1984). Here, the jury heard evidence from

---

[2] All statutory references are to RSMo. (Supp. 2016), unless otherwise indicated.

5

both D.R. and Defendant, and the jury was free to disbelieve Defendant's testimony. See State v. Kilgore, 505 S.W.3d 362, 369 (Mo. App. E.D. 2016).

Third, regarding whether Defendant used more force than necessary, Defendant held a fully-loaded revolver while Rivers wielded an ashtray. Although Defendant was "not required to determine with absolute certainty the amount of force necessary," the law does require that he "not use any more force than shall reasonably appear to him in the circumstances to be necessary." Id. Here, the jury, within its "sound discretion," could have found an ashtray to be no match for a fully-loaded revolver. See Chambers, 671 S.W.2d at 784.

Fourth, regarding whether Defendant failed to do everything in his power to avoid the danger, Whalen testified Rivers initially tried to leave the house, but he was stopped by Defendant. Additionally, D.R.'s testimony placed Defendant closest to the front door. Defendant could have allowed Rivers to leave the house, or Defendant could have simply left the house through the front door himself.

Given the foregoing, the State presented sufficient evidence from which a trier of fact could find lack of self-defense beyond a reasonable doubt. "When a defendant claims self-defense, the jury is not bound by his self-serving explanation." Kilgore, 505 S.W.3d at 369. "The jury may choose to accept or reject all, some, or none of the testimony of any witness, including the defendant's testimony." Id. "A person is entitled to acquittal as a matter of law on the basis of self-defense only if there is undisputed and uncontradicted evidence clearly establishing self-defense." State v. Henderson, 311 S.W.3d 411, 414 (Mo. App. W.D. 2010). Here, the jury heard conflicting accounts and in its discretion convicted Defendant. Given there was evidence from which the jury could find the State disproved self-defense, we will not disrupt the jury's verdict on appeal. See State v. Chaney, 967 S.W.2d 47, 52 (Mo. banc 1998). Point denied.

6

<u>Point II</u>

Defendant's second point is that there was insufficient evidence to support his convictions of second-degree murder and the accompanying conviction of armed criminal action, because he lacked the knowledge requirement for second-degree murder. We disagree.

"A person commits the offense of murder in the second degree if he or she: (1) knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person . . . ." Section 565.021(1). A person acts knowingly if "he is aware that his conduct is practically certain to cause death." <u>State v. Smith</u>, 891 S.W.2d 461, 466 (Mo. App. W.D. 1994). The State need not prove that the defendant "infallibly knew that death would follow." <u>Id.</u>

Here, Whalen testified Defendant pulled a revolver from his pocket and placed it against Whalen's head, stating, "Bitch, I'll kill him. I'll kill you, him, and myself." D.R. testified that Defendant kept the revolver trained on Rivers and told him to, "Get on your knees." Defendant denied making these statements. He testified he was not trying to kill Rivers and did now know whether or not he had even shot Rivers. However, "[t]he natural consequence of firing a handgun toward the victim 'is, at the very least, great bodily harm.'" <u>State v. Pulley</u>, 356 S.W.3d 187, 190 (Mo. App. E.D. 2011) (quoting <u>State v. Manley</u>, 223 S.W.3d 887, 891 (Mo. App. W.D. 2007)). The jury heard testimony that Defendant declared an intent to kill Rivers, and Defendant testified he fired the revolver toward Rivers. Based on this evidence, a reasonable jury could find Defendant was well aware that his conduct was practically certain to cause death. Recalling that "[t]he jury may choose to accept or reject all, some, or none of the testimony of any witness, including the defendant's," <u>Kilgore</u>, 505 S.W.3d at 369, the fact that Defendant offered conflicting

7

testimony does not affect the conclusion that the State presented sufficient evidence from which the jury could find Defendant knowingly shot Rivers. Point denied.

## Conclusion

We affirm the judgment of the trial court, convicting Defendant of murder in the second degree, armed criminal action, and two counts of unlawful use of a weapon.

Gary M. Gaertner, Jr., Judge

Kurt S. Odenwald, P. J., concurs.
Colleen Dolan, J., concurs.

8