

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112322 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | Cause No. 22SL-CR00004-01 |
| | ) | |
| DEONTE M. ROBINSON, | ) | Honorable Dean P. Waldemer |
| | ) | |
| Appellant. | ) | Filed: April 29, 2025 |

## Introduction

Deonte M. Robinson ("Robinson") appeals his convictions of second-degree murder and armed criminal action.[1] In his sole point on appeal, Robinson contends the trial court erred in finding him guilty of second-degree murder because the State failed to produce sufficient evidence to disprove he acted in self-defense. Specifically, Robinson argues the evidence demonstrated Victim was the initial aggressor and he reasonably believed deadly force was necessary to protect himself from a forcible felony. This Court holds the State provided sufficient evidence to disprove Robinson's defense of self-defense.

Accordingly, the judgment of the trial court is affirmed.

---

[1] Robinson's only argument regarding his armed criminal action conviction asserts, "[t]his Court should reverse [his] conviction for murder in the second degree and the attached charge of armed criminal action[.]" Because Robinson does not develop an argument regarding his armed criminal action conviction, we do not analyze this conviction. *See* *State v. Caves*, 700 S.W.3d 596, 599 (Mo. App. E.D. 2024) (stating it is not within the province of this Court to decide arguments that are merely asserted but not developed).

**Factual and Procedural Background**

On December 31, 2021, Robinson attended a gathering at his mother's ("Mother") house. Victim and some members of Victim's family, including Victim's girlfriend ("Girlfriend"), their children, his brother ("Brother"), and some of Robinson's siblings were also present at the gathering. Robinson and Victim were introduced and they engaged in a conversation about who would win a car race. This discussion led to a physical altercation where Robinson displayed a firearm. Other guests intervened and diffused the altercation. Victim then left the house.

Realizing he had forgotten his child's car seat, Victim returned to the house to retrieve it and then headed out to his vehicle. Robinson then went outside with a gun in his hand. Victim noticed Robinson's vehicle was blocking his vehicle in the driveway and asked Robinson to move his vehicle, but Robinson refused. The two began to argue again. During the argument, Victim threw the car seat in Robinson's direction. The car seat missed Robinson, and landed in the yard. Approximately four seconds later, Robinson shot Victim four times. Victim later died from his gunshot wounds.

The State charged Robinson with first-degree murder and armed criminal action. Robinson waived his right to a jury trial and the matter proceeded to a bench trial. At trial, the State produced video footage of the shooting that was captured by a neighbor's doorbell camera.[2] The State also presented testimony of Girlfriend, Brother, a medical examiner, and one of the officers who responded to the scene. Girlfriend stated Robinson was the only person with a gun at the gathering, Victim had nothing in his hands when Robinson shot him, and the shots were fired "about four or five seconds" after the car seat was thrown. Brother also testified Robinson was the only person

---

[2] Two versions of the video were produced at trial. The record indicates a 17 second doorbell camera video was initially entered as an exhibit by the State. A longer, 3 minute, 48 second version of the video was also entered into evidence on the second day of trial with no objections. However, only the 17 second version of the video was made part of the record on appeal.

he saw with a gun that night and Victim was "empty handed" when Robinson shot him. The medical examiner confirmed Victim was shot three times in the back and once in the chest. The medical examiner further stated the gunshot wounds caused Victim's death. The officer who was present at the scene testified he did not find a weapon on or near Victim's person while he was attending to Victim.

Mother and Robinson's siblings testified on Robinson's behalf. Mother testified Victim "ran up and threw a car seat" at Robinson during the altercation outside the home. Mother did not recall seeing anyone other than Robinson raise or fire a gun. Robinson's siblings testified they had a different vantage point from Mother but gave a similar account of the events and his brother stated Robinson was the only person he saw with a gun that night. Also, Robinson testified in his own defense. He stated Victim hit him first inside the home. When they were outside the house, he explained, Victim threw the car seat and he "kind of like ducked[.]" Robinson then turned to look at Victim and saw he "had a gun" and "attempt[ed] to raise it" in Robinson's direction. Robinson testified, "I shot him, before he could shoot me."

> At the close of evidence and arguments, the trial court found:
>
> [T]he evidence regarding the initial aggressor, as far as self-defense, is in conflict. It's clear to me that the initial aggressor and the aggressors switched places many times in this case, and it's hard for the Court to definitively say that the defendant or the victim was the initial aggressor.
>
> That being said, that makes the Court then go ahead and examine self-defense. And the Court has examined self-defense … in great detail, not only in the testimony that was given in this case, but in the video. The Court, based upon that evidence, finds that the use of deadly force in this case was not reasonable or justified, given the facts of the case, and, therefore, the Court rejects the defendant's claim of self-defense.

The trial court acquitted Robinson of first-degree murder but found him guilty of second-degree murder and armed criminal action. Robinson was sentenced to twenty years' imprisonment

for the second-degree murder conviction and five years' imprisonment for the armed criminal action conviction. The sentences were ordered to be served consecutively.

This appeal follows.

## Standard of Review

"We apply the same standard of review for sufficiency-of-the-evidence challenges in bench-tried cases as in jury-tried cases." *State v. Sinks*, 652 S.W.3d 322, 334 (Mo. App. E.D. 2022). "Our review is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." *Id.* (internal quotations and citations omitted). "We accept as true all evidence and reasonable inferences favorable to the verdict, disregarding contrary inferences unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." *State v. Demery*, 568 S.W.3d 552, 555 (Mo. App. E.D. 2019) (internal quotations and citation omitted). "We do not weigh the evidence or decide the credibility of witnesses, but defer to the trial court." *Sinks*, 652 S.W.3d at 334 (citations omitted). "The trier of fact may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances, and other testimony in the case." *Id.* (citations omitted).

## Discussion

In his sole point on appeal, Robinson contends the State presented insufficient evidence to disprove he acted in self-defense.[3] This Court disagrees, and holds the State produced sufficient

---

[3] This Court notes Robinson violates Supreme Court of Missouri Rule 84.04(e), which governs the argument section of an appellant's brief, multiple times. Rule 84.04(e) requires that "[a]ll factual assertions in the argument shall have specific page references to the relevant portion of the record on appeal…." Robinson makes multiple conclusory statements without citation to the record on appeal or supporting case law. It is not the duty of this Court to "comb the record for support for [Robinson's] factual assertions, decipher [his] points on appeal, and develop a legal argument supporting [his] claims." *Est. of Allen*, 615 S.W.3d 851, 855 (Mo. App. E.D. 2020). Any point made by Robinson that is supported only by a conclusory statement is deemed abandoned. *See id.* at 854.

evidence from which a reasonable trier of fact could find Robinson did not act in self-defense when he used deadly force against Victim.

"Self-defense is an absolute defense to criminal prosecution for homicide offenses." *Id.* at 337. Pursuant to the self-defense statute, "[a] person may … use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person[.]" § 563.031.1.[4] To prevail on a defense of self-defense, a defendant:

> (1) must not have been the aggressor in the assault; (2) must have reasonable grounds for the belief that he is faced with immediate danger of serious bodily injury; (3) must not use more force than that which appears reasonably necessary; and (4) must do everything in his power consistent with his own safety to avoid the danger.

*Demery*, 568 S.W.3d at 555.

"A person is entitled to acquittal as a matter of law on the basis of self-defense only if there is undisputed and uncontradicted evidence clearly establishing self-defense." *State v. Henderson*, 311 S.W.3d 411, 414 (Mo. App. W.D. 2010) (citation omitted). The trier of fact determines whether the defendant acted in self-defense when "there is conflicting evidence or when different inferences can reasonably be drawn from the evidence[.]" *Id.* "The [self-defense] statute … requires the defendant to bear the burden of showing self-defense is supported by evidence to inject self-defense, at which point the burden shifts to the State to prove a lack of self-defense beyond a reasonable doubt." *State v. Bruner*, 541 S.W.3d 529, 534–35 (Mo. banc. 2018) (quotations omitted). The State's burden is met if any individual element necessary to the self-defense claim is absent. *State v. Jones*, 553 S.W.3d 909, 916 (Mo. App. S.D. 2018).

---

[4] All statutory references are to Mo. Rev. Stat. Cum. Supp. (2021).

A defendant may inject self-defense through their own testimony "as long as the testimony contains some evidence tending to show that he acted in self-defense." *Bruner*, 541 S.W.3d at 535 (citation omitted). In the present case, Robinson successfully injected the defense of self-defense by testifying before the trial court that he feared for his life after Victim threw a car seat at him and attempted to raise a gun at him. *See id.* As a result, the burden shifted to the State to disprove beyond a reasonable doubt any individual element of Robinson acting in self-defense. *See id.* at 534–35; *Jones*, 553 S.W.3d at 916.

The trial court rejected Robinson's defense of self-defense. In doing so, the trial court made no determination regarding the initial-aggressor element of self-defense. Therefore, we do not discuss the first element of self-defense. However, we conclude the State satisfied its burden of proving a lack of self-defense beyond a reasonable doubt by disproving the remaining three elements. Specifically, we hold the State presented sufficient evidence from which a reasonable trier of fact could find Robinson did not reasonably believe he was faced with immediate danger; used more force than which appeared reasonably necessary; and did not do everything in his power to avoid the danger. We discuss these elements in turn.

First, the State produced sufficient evidence to show Robinson lacked a reasonable belief he was faced with imminent death, serious physical injury, or a forcible felony. Deadly force is defined as "physical force which is used with the purpose of causing or which a person knows to create a substantial risk of causing death or serious physical injury." *Sinks*, 652 S.W.3d at 338 (internal quotations and citations omitted). The use of deadly force is justified "only if the defending person reasonably believes that death, serious physical injury, or a forcible felony ***is actually occurring or is imminent***." *Id.* (emphasis in original).

6

On appeal, Robinson argues the car seat posed a threat of imminent serious physical injury or a forcible felony, thus justifying his use of deadly force.[5] Specifically, Robinson contends "it is very likely that, *if* the car seat connected with [his] head, as was clearly the [Victim's] intent, it could have caused him a concussion and/or a loss of consciousness, or some other severe type of brain injury that had a substantial probability of resulting in [his] death." (emphasis added). In doing so, Robinson is asking this Court to supply missing evidence by speculating that Victim intended to commit a forcible felony or cause him serious physical injury, and the degree of injury Robinson could have suffered *if* the car seat *would have* hit him. This we cannot do. This Court must view the evidence in the light most favorable to the verdict without supplying missing evidence. *See State v. Dixson*, 546 S.W.3d 615, 619 (Mo. App. E.D. 2018). At best, Robinson's testimony established he *feared* the car seat would strike him and cause a loss of consciousness. But, *fear* that a forcible felony or serious physical injury might occur is insufficient to demonstrate imminent danger which would justify the use of deadly force. *See State v. O'Keefe*, 681 S.W.3d 615, 628 (Mo. App. E.D. 2023).

Rather, as discussed above, Missouri law requires a defendant to reasonably believe they are faced with *imminent* death, serious physical injury, or a forcible felony to justifiably resort to deadly force. *Sinks*, 652 S.W.3d at 338. "A reasonable belief is one based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief[.]" *Id.* (internal quotations and citations omitted). "To justify the use of deadly force, '[s]ome affirmative action, gesture, or communication by the person feared indicating the immediacy of danger, the

---

[5] At trial, Robinson's self-defense theory was premised on Victim holding both the car seat and a gun. But on appeal, Robinson's argument solely pertains to how the car seat posed a threat of serious physical injury or a forcible felony and, therefore, he was justified in using deadly force. Robinson abandons his claim regarding Victim allegedly attempting to raise a gun at him, justifying his use of deadly force. Because Robinson does not raise the issue on appeal, much less develop an argument for this claim, we do not analyze it.

inability to avoid or avert it, and the necessity to use deadly force as a last resort must be present.'" *Id.* at 338 (citation omitted).

Here, the neighbor's doorbell video refutes Robinson's argument that it was reasonable for him to believe he was faced with an imminent forcible felony or serious physical injury. After Victim threw the car seat, the video shows the car seat landed in the yard, did not strike Robinson, and they stood a distance from one another. Then, approximately "four or five seconds" later, Robinson fired his weapon and shot Victim. Fatal to Robinson's argument is the fact the car seat was no longer in Victim's hands or within his reach to pose an immediate danger when Robinson shot Victim. Therefore, as Victim and Defendant stood some distance apart from one another, and there was no affirmative action, gesture, or communication on Victim's part, there was no imminent danger to justify Robinson's use of deadly force. *See id.*; *see also State v. Clement*, 661 S.W.3d 396, 405 (Mo. App. E.D. 2023) (stating any threat of harm to a defendant is less imminent where there is evidence of distance between the victim and defendant).

Second, the State produced evidence showing Robinson's use of deadly force was unreasonable and unnecessary because Victim did not have a dangerous instrument or weapon at the time he was shot. "Although [Robinson] was not required to determine with absolute certainty the amount of force necessary, the law does require that he not use any more force than shall reasonably appear to him in the circumstances to be necessary." *Demery*, 568 S.W.3d at 556 (internal quotations and citation omitted). Ultimately, "the reasonableness of a defendant's belief is a question of fact reserved for the [fact-finder's] determination." *State v. Jones*, 686 S.W.3d 293, 303 (Mo. App. E.D. 2024).

Here, it is clear once Victim threw the car seat, it was no longer a threat because it missed Robinson and landed in the yard. Further, multiple witnesses testified Victim had nothing in his

8

hands when Robinson shot him. Although there was conflicting testimony about the altercation, the trial court specifically found Robinson's use of deadly force was unreasonable. It is well-established this Court does "not weigh the evidence or decide the credibility of witnesses, but defer[s] to the trial court." *Sinks,* 652 S.W.3d at 334 (citations omitted). Viewing the evidence in the light most favorable to the verdict, there was nothing in Victim's hands when Robinson shot him. Accordingly, Robinson had no justification to use *any* force, let alone deadly force, against an attack that posed no obvious threat of death. *See State v. Fincher*, 655 S.W.2d 54, 60 (Mo. App. W.D. 1983) ("Self[-]defense does not grant the defender the privilege to use deadly force against an obviously nondeadly attack." (citation omitted)).

Lastly, the State produced sufficient evidence showing Robinson failed to do everything in his power to avoid danger. Missouri law requires a defendant to do everything in their power, consistent with their personal safety, to avoid the danger and the need to take a life. *State v. Clark*, 486 S.W.3d 479, 490 (Mo. App. W.D. 2016). Here, Robinson had the ability to avoid taking Victim's life and had multiple avenues of retreat before resorting to deadly force. He could have stayed inside the house, left the house through a different door, or just walked to his vehicle and left the area. All of these options were easily accessible, and he could have avoided any confrontation after Victim exited the house. Rather than pursue these avenues of retreat, Robinson engaged in another argument with Victim and ultimately shot him. Accordingly, the State produced sufficient evidence showing Robinson did not do everything in his power to avoid the necessity of taking Victim's life. *See Henderson*, 311 S.W.3d at 414–15 (holding the defendant was not justified in using deadly force in self-defense because she could have avoided taking the victim's life and had multiple avenues of retreat).

Given the foregoing, Robinson has failed to demonstrate there was "undisputed and uncontradicted evidence clearly establishing self[-]defense." *Id.* at 415 (citation omitted). "Importantly, '[s]elf-defense is an issue for the factfinder when there is conflicting evidence or different inferences could be reasonably drawn from the evidence.'" *Sinks,* 652 S.W.3d at 340 (citation omitted). The trial court heard conflicting accounts regarding the altercation from multiple witnesses who attended the gathering. This Court cannot charge the trial court with error for rejecting Robinson's position or version of events as it is not within this Court's province to reweigh the evidence nor the credibility of the witnesses, but rather, we must view the evidence in the light most favorable to the conviction. *See id.* at 342. Accordingly, we hold there is ample evidence to support the trial court's finding Robinson did not act in self-defense and we will not disrupt the trial court's finding on appeal. *See Demery*, 568 S.W.3d at 556.

Robinson's sole point on appeal is denied.

### Conclusion

The judgment of the trial court is affirmed.

_____
Michael S. Wright, Judge

John P. Torbitzky, P.J. and
Robert M. Clayton III, J. concur.

10