

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112866 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | Cause No. 2122-CR01323-01 |
| | ) | |
| JANAYA NEITHER, | ) | Honorable Katherine M. Fowler |
| | ) | |
| Appellant. | ) | Filed: September 23, 2025 |

### Introduction

Janaya Neither (Appellant) appeals from the judgment and sentence after a guilty jury verdict of assault in the second degree (Count 1) and armed criminal action (Count II). Appellant does not challenge the sufficiency of the evidence supporting her conviction, but she argues the trial court abused its discretion in admitting certain social media posts without an adequate foundation, resulting in prejudice. We affirm.

### Background

The State charged Appellant with the class A felony of assault in the first degree and the unclassified felony of armed criminal action (ACA) for causing serious physical injury to T.G. (Victim) by slashing her with a knife.

At trial, the State adduced the following evidence. In August of 2021, Victim traveled to St. Louis to spend the weekend working at an exotic dance club (the club).

Victim and Appellant, who was also in town to work as a dancer at the same club, agreed that Appellant would share Victim's Airbnb apartment. On their second evening in St. Louis, Victim went to the club while Appellant and her friend (Friend) went to dance at a private party. In the early hours of August 7, 2021, Appellant returned to the club, and at this point, the testimonies of Victim and Appellant diverged.

Victim testified to the following. When Appellant arrived at the club, she was belligerent and trying to fight other dancers. Victim attempted to calm Appellant down, which led to a verbal altercation and they each shoved the other. Although Victim wanted to avoid a physical fight, they continued to spar verbally until the club's security separated them and the owner of the club, known as T, ordered Appellant to leave. Victim then returned to her Airbnb apartment and was sitting on her bed when she heard Appellant and Friend enter the apartment, calling her name. Appellant came into Victim's bedroom and grabbed her by her hair, pulling her onto the floor, where Appellant slashed Victim's arms, chest, face, and scalp 15 times with a knife. Victim identified Appellant to law enforcement and gave them Appellant's Instagram account name.

By contrast, Appellant presented a theory of self-defense at trial, testifying to the following events. When Appellant arrived at the club, Victim was rude and initiated an argument, during which Victim threatened Appellant with scissors. When Appellant returned to the Airbnb with Friend at the end of the night to collect her belongings, Appellant grabbed a knife from the kitchen and placed it in her waistband, stating she planned to hold it "just in case" she had to use it, recalling the earlier incident at the club. In the apartment, Appellant confronted Victim verbally, which Victim escalated to a physical fight. Victim started choking Appellant from behind, at which point Appellant

took the knife from her waistband and stabbed Victim to get her to let go. Appellant stated that she only stabbed Victim while Victim was behind her, strangling her. When Victim released Appellant, Appellant left the apartment, and she agreed she did not call the police, although she realized that Victim was injured.

During its cross-examination of Appellant, the State sought to admit three exhibits of posts from an Instagram account, allegedly Appellant's. Exhibit 92 was a screenshot of an Instagram profile for an account with the name "Bonnita_Applebum_." Exhibit 93 was a screenshot of a post from that Instagram account with the words: "T better be glad he blocked me from [the club], I got something for his bitch ass," and "Hurry up with the case shit so I can pay him a visit." Exhibit 94 was another screenshot from the same account of an image of a police report with the words "defendant[']s copy" stamped on it. Both Exhibits 93 and 94 had the profile name "Bonnita_Applebum_" at the top, and they displayed the screenshots of the posts had been taken at 10:52[1] and that the posts had been visible for "2h" at that time.

Appellant objected to the admission of Exhibits 93 and 94 for lack of foundation. The trial court allowed the State to question Appellant about the Instagram account and the posts to establish a foundation. Appellant admitted that the Instagram account with the profile name Bonnita_Applebum_ was her account, and she denied that anyone else had access to her account. Although she testified that she did not recall authoring either of the posts, she acknowledged the posts originated from her account, over which she had exclusive control. The trial court admitted the exhibits, finding Appellant authenticated the posts when she admitted they came from her account, to which no one else had access.

---

[1] The exhibits did not specify whether it was 10:52 a.m. or p.m.

After the trial court admitted the exhibits, Appellant testified on redirect examination that "at some point" she had deleted her Instagram account with the name Bonnita_Applebum_, and someone else created a new account using the identical username. Appellant suggested that anyone could have made posts that appeared to come from her account.

The jury convicted Appellant of the lesser offense of assault in the second degree and ACA. The trial court sentenced her to a term of seven years in the Missouri Department of Corrections for the assault count and a term of five years for the ACA count, ordered to run consecutively, for a total sentence of twelve years' imprisonment. This appeal follows.

<u>Discussion</u>

In her sole point on appeal, Appellant argues the trial court abused its discretion in admitting Exhibit 93 and Exhibit 94, social media posts made on Appellant's Instagram account, because there was an inadequate foundation to admit the exhibits, and the admission of this evidence resulted in prejudice. We disagree.

Trial courts have broad leeway in choosing to admit or deny evidence, and we review a trial court's decision for an abuse of that discretion. <u>State v. Wilson</u>, 602 S.W.3d 328, 332 (Mo. App. W.D. 2020). Likewise, trial courts have broad discretion to determine whether a party has laid a sufficient foundation to admit evidence. <u>State v. Lumzy</u>, 713 S.W.3d 729, 738 (Mo. App. E.D. 2025). We review the admission of evidence for prejudice, not error alone, and will reverse only if the error was so prejudicial it deprived the defendant of a fair trial. <u>Id.</u> An error is prejudicial only if there is a reasonable probability that, but for the trial court's error, the outcome of the trial would have been different. <u>Id.</u>

4

Generally, before a trial court may properly admit a writing, the party seeking to admit the evidence must lay a proper foundation for it, establishing the authenticity of the document by proving that the document is what it purports to be. State v. Hein, 553 S.W.3d 893, 897 (Mo. App. E.D. 2018). These foundational requirements apply equally to online and social media messages. Wilson, 602 S.W.3d at 332; State v. Snow, 437 S.W.3d 396, 402 n.4 (Mo. App. S.D. 2014) ("we believe the evidentiary foundation for a communication through [a social media platform] should follow the rules for writings in general"). Courts do not presume the authenticity of a writing, but the proponent of the evidence must offer some proof, whether through direct or circumstantial evidence, that the person purported to have authored the writing actually did so. Wilson, 602 S.W.3d at 332-33; State v. Harris, 358 S.W.3d 172, 175 (Mo. App. E.D. 2011).

Authenticating a writing should not be unduly burdensome and does not require conclusive proof of authorship; rather, authorship can be established with circumstantial evidence. See Harris, 358 S.W.3d at 175. To establish authenticity, the proponent may present evidence that the communication came from a device or account under the alleged sender's control, or that the content contains distinctive characteristics identifying the author. Id. A defendant's denial or failure to recall making a statement does not automatically preclude admissibility where there is some evidence linking the message to the sender. Wilson, 602 S.W.3d at 333 (finding sufficient foundation to admit social media messages despite defendant's claim he did not send them, where witness testified to recognizing defendant's profile photo and name and identified content as containing information unlikely to be known by others); State v. Miller, 208 S.W.3d 284, 288 (Mo. App. 2006) ("[t]o warrant the admission of evidence ... a prima facie showing of identity

5

and connection with the crime is necessary and sufficient; clear, certain, and positive proof is not required.")

We will not reverse a trial court's decision to admit a writing so long as there was some evidence to support the court's finding of authenticity. See Snow, 437 S.W.3d at 403; cf. Harris, 358 S.W.3d at 176. Weaknesses in the evidence surrounding who authored the writing do not affect *admissibility* but instead are to be considered by the jury when deciding how much *weight* to give the writing. Snow, 437 S.W.3d at 403.

Here, there was sufficient evidence that Appellant was the author of the posts to lay a foundation to admit them. Although Appellant testified that she did not recall making the post in Exhibit 93, she confirmed that the post originated from her Instagram account, and that no one else had access to the account. Appellant's exclusive control over the Instagram account was sufficient to attribute the online writing to her to establish a proper foundation to admit Exhibit 93. See Harris, 358 S.W.3d at 175 ("[p]roof could be in the form of admission by the author that he actually sent them, or simply an admission by the author that the number from which the message was received is his number and that he has control of that phone").

Exhibit 94 was a screenshot of a post on Appellant's Instagram account showing a copy of the police report marked "defendant[']s copy." This distinctive detail uniquely linking the Appellant in this case to the post was sufficient evidence of its authenticity and genuineness to justify its admission. See Wilson, 602 S.W.3d at 333; see also Harris, 358 S.W.3d at 175. Further, during the cross-examination of Appellant, when shown Exhibit 94 and asked if she authored the post, Appellant responded "[p]ossibly," and she also conceded that, even though she did not remember the post, she agreed that it came from

6

her Instagram account. Moreover, Exhibits 93 and 94 were posted within the same hour by the same account, and thus, the trial court could reasonably assume the same person authored both posts.

During recross, Appellant testified that "at some point" she had deleted her Instagram account and that an unknown individual created a new account with the identical username of Bonnita_Applebum_. Although Appellant suggested that someone else could have made the posts appear to come from her account, this argument affects only the weight the jury should assign to the evidence, not its admissibility. See Snow, 437 S.W.3d at 403. Because there was sufficient evidence in the record to establish the authenticity of the Instagram posts, we find that the trial court did not abuse its discretion in admitting Exhibits 93 and 94.

Moreover, even if the trial court erred in admitting State's Exhibits 93 and 94 for lack of foundation, which we do not concede, Appellant has not demonstrated that this alleged error resulted in prejudice warranting reversal. See State v. Forrest, 183 S.W.3d 218, 223-24 (Mo. banc 2006) (for error to warrant reversal, defendant must prove that error was so prejudicial that it deprived them of fair trial). Appellant contends that the Instagram posts shown in Exhibits 93 and 94 portrayed her as aggressive and thereby weakened her theory of self-defense, causing prejudice. However, even excluding the challenged exhibits, the record contains sufficient evidence from which the jury could have disbelieved Appellant's self-defense claim anyway.

To assert self-defense, there must be "a real, actual and immediate threat of bodily violence to which defendant's actions are an appropriate and proportional response." State v. Miller, 91 S.W.3d 630, 635 (Mo. App. W.D. 2002). In addition, the defendant must

show that they did not provoke the attack and that they attempted to avoid the confrontation. Id. Appellant here testified that, upon entering the Airbnb apartment, she both intentionally armed herself with a knife "just in case" and initiated the verbal argument with Victim, although she alleged that Victim was the one to escalate the argument into a physical fight. This testimony undermines her claim of self-defense, in that it demonstrated that she provoked the argument and that she was not attempting to avoid the confrontation. See id.

Further, the nature and location of Victim's injuries, specifically deep gashes to her chest, were inconsistent with Appellant's claim that Victim was holding Appellant in a chokehold from behind. When other evidence is inconsistent with a defendant's claim of self-defense, the jury may believe all, some, or none of the testimony of any witness, including a defendant's claim of self-defense. See State v. Demery, 568 S.W.3d 552, 556 (Mo. App. E.D. 2019) (affirming conviction where jury rejected defendant's self-defense claim because it was not supported by evidence). Last, Appellant fled the apartment without seeking medical assistance for Victim, which supported an inference of consciousness of guilt. See State v. Clark, 486 S.W.3d 479, 491-92 (Mo. App. W.D. 2016) (finding defendant's flight from the scene instead of rendering assistance, calling for ambulance, or waiting for police to arrive suggested defendant did not act in self-defense).

Under the facts here, there is no reasonable probability that the outcome of the trial would have been different had Exhibits 93 and 94 been excluded, and thus no prejudice resulted. See Wilson, 602 S.W.3d at 334 (no prejudice where admitted evidence was not outcome-determinative and there was no reasonable probability the jury would have reached different result). Point denied.

8

## Conclusion

The trial court's judgment and sentence are affirmed.

_____
Gary M. Gaertner, Jr., J.

Rebeca Navarro-McKelvey, P.J., and
James M. Dowd, J., concur.

9